HAYES, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 11 — November 29, 1901.*

*Criminal law and practice: Homicide: Post* mortem *examination: Exhumation by public official: Evidence: Instructions to jury: Exceptions: Manslaughter: Killing while perpetrating misdemeanor: Intent: Remarks of counsel: Sentence: Discretion.*

1. A person accused of murder is not entitled to notice that an examination of the remains of the deceased will be made, some months after death, on behalf of the prosecution.
2. Sec. 4592, Stats. 1898 (providing a punishment for the person, not lawfully authorized, who disinters a human body), does not apply to exhumations made by public officials with a view of ascertaining whether a crime had been committed.
3. In a prosecution for murder, the fact that several months elapsed between the commission of the crime and an examination of the body, affects rather the weight of the testimony of the person making the examination than its competency.
4. Where many paragraphs in a charge to the jury are not subject to criticism, an exception to "each and every portion of the charge as given," is too general and will be disregarded.
5. The evidence (stated in the opinion) is *held* sufficient to sustain a conviction of manslaughter in the first degree under sec. 4346,

Stats. 1898 (the killing of a person without design, while engaged in the perpetration of, or in attempting to perpetrate, a misde-meanor, in cases where such killing would have been murder at the common law).

6. Where a person was killed during an affray, a participant in the af-fray who acted with others in committing an assault and battery upon the deceased may be guilty of manslaughter in the first de-gree as defined by sec. 4346, Stats. 1898, even though he did not strike the fatal blow.

7. In such a case a statement of the attorney for the prosecution, in opening the case, that it would be shown that the deceased came to his death by "external violence inflicted by the defendant," is *held* not to have prejudiced the defendant, where his attorney was not misled thereby into believing that the prosecution elected to rely upon that cause of death.

8. In a prosecution for murder the intent to kill is not to be judged alone from the act causing the death, but must be gathered from all the surrounding circumstances. Thus, the fact that one person stabs another in a vital part of the body does not conclusively show an intent to kill.

9. Statements by counsel for the state when the accused was brought up for sentence that the past record of the accused was bad and that he should have a severe sentence, which were not shown to have been false or to have influenced the trial judge in pronouncing sentence, are *held* not to have been prejudicial, the *quantum* of punishment, within the statute, being particularly within the prov-ince of the trial judge.

ERROR to review a judgment of the circuit court for Co-lumbia county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

Plaintiff in error was informed against for murder, and was convicted of manslaughter in the first degree, and sen-tenced for a term of eight years. The affray, resulting in the death of a man called Murphy, occurred near the city of Portage. A party of nine or ten tramps were camping in a grove near the depot. Murphy became involved in a row with one of them, and finally cut his throat with a razor. He then commenced fighting with *Hayes* and a boy who was with them. The boy struck at him with a knife. Murphy ran, pursued by the others. They met others of

their party, and became involved in what some of the witnesses say appeared to be a "free-for-all" fight. Other witnesses say it seemed as though they all were attacking Murphy. He became separated from the others, and was followed by *Hayes*, who struck him on the head with a broom handle and with his fists, and kicked him. Murphy fell near the railroad track, and died shortly afterwards. His clothes were bloody, and a knife wound was found in the abdomen. About seven months afterwards the body was exhumed and an autopsy made. The doctor found a wound on the side of the head and a blood clot on the brain. There were also several knife wounds in the back, which penetrated the lungs, which, according to the doctor's opinion, were sufficient to cause death. After the affray was over the other participants separated, and later *Hayes* was captured, with another of the party.

The accused was brought to trial upon an information charging him with murder. The case was submitted to the jury as to the guilt of murder in the first degree, and manslaughter in the first, second, and third degrees. He was found guilty of the first degree of manslaughter. The court refused to give several instructions requested by the accused, and refused to set aside the verdict and grant a new trial, to which due exception was taken. No exceptions were filed to the charge of the court or preserved in the bill of exceptions, except the following recitation:

"The defendant excepted specifically to each and every portion of the charge as given, and also to the refusal of the court to submit the instructions requested by defendant."

The errors relied on for reversal will sufficiently appear in the opinion. The accused was sentenced to imprisonment in the state prison for a term of eight years, and now seeks to have such sentence reviewed on writ of error.

*Daniel H. Grady*, for the plaintiff in error.

For the defendant in error there was a brief by the *At-*

*torney General*, and oral argument by *R. F. Hamilton*, second assistant attorney general, and *W. S. Stroud*.

BARDEEN, J.   Only such of the assigned errors as are herein noticed are considered of sufficient importance to require discussion.

The plaintiff in error complains of the admission of the testimony of Dr. Meacher as to the result of a *post mortem* examination made by him of the remains of the deceased some months after death, without notice to him.   We know of no law that requires notice to the accused in such cases. The disinterment and examination was under the direction of the proper authorities, and in furtherance of public justice.   It does not appear that it was done in defiance of sec. 4592, Stats. 1898.   As said in *People v. Fitzgerald*, 105 N. Y. 146, and approved by this court in *Palmer v. Broder*, 78 Wis. 483, this statute was not intended to apply to exhumations made by public officials with a view of ascertaining whether a crime had been committed.   See *State v. Bowman*, 80 N. C. 432.   The objection that the evidence was inadmissible because of the length of time that had elapsed goes rather to its weight than its competency.   The doctor testified that the body was not so far decomposed but that he was able to discover the knife wounds in the back and the presence of blood in great quantity in the chest cavity.   It was for the jury to determine whether the proof was of sufficient weight to satisfy legal requirements.   Its potency was not shaken by any other proof offered, and seems to have been sufficient to establish the fact aimed at with legal certainty.

Objections are argued to instructions given the jury. These objections cannot be considered, because no available exceptions to the charge appear in the record.   An omnibus exception to a whole charge, or a single exception to a portion of the charge containing numerous independent

propositions, some of which are good, is too general, and will be disregarded. *Bouck v. Enos*, 61 Wis. 660; *Luedtke v. Jeffery*, 89 Wis. 136; *Green v. Hanson*, 89 Wis. 597; *Sheppard v. Rosenkrans*, 109 Wis. 58. The exceptions in the record are to "each and every portion of the charge as given." Many of the paragraphs in the charge, if not the whole charge, are beyond the reach of legitimate criticism. This being so, the exception mentioned is too general to present for review the specific errors mentioned.

The first instruction requested was to the effect that the jury should return a verdict of not guilty. This raises the question of whether the verdict is unsupported by the evidence. The theory of counsel is that the evidence fails to show that the deceased came to his death through any act or agency for which the accused was responsible. In order to find him guilty of manslaughter in the first degree, it was necessary for the jury to negative the killing by design, and to find that it was done while engaged in the perpetration of a crime or misdemeanor not amounting to a felony, or in an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at the common law. Sec. 4346, Stats. 1898. The testimony shows that the deceased first became involved in a quarrel with a man who was afterwards found with his throat cut, and immediately afterwards in a row with a boy who was with the accused. The boy struck at him with a knife, and he thereupon ran, followed by the boy and the accused. They met others of their party, and a general quarrel ensued. Some of the witnesses say that it had the appearance of a "free-for-all" fight, while others say it seemed as though all were attacking deceased. Accused was with the party, and, while the evidence is not clear as to what part he took during the general melée, it appears that deceased became separated from the others, and ran, and was pursued by the accused. While deceased was running, the accused struck him with his fist,

hit him on the head with a broom handle or stick, and kicked
him after he fell. The wounded man died shortly after-
wards. There was a knife wound in his abdomen, four knife
wounds in his back, a bruise on his head, and a blood clot dis-
covered in his cranium, although his skull was not fractured.
The doctor was unable to say whether the wound on the head
would have caused death or not. No one saw a knife in the
hands of the accused. It is evident from the testimony that
the whole party were against the big man who was killed.
The accused was in pursuit of him when he met the second
body of men after the first affray. They indulged in a gen-
eral fight, and it is quite evident, from the whole situation,
the accused was not a spectator. They all seemed bent on
getting the best of the man that was killed. They were
acting together in committing an assault and battery upon
him, apparently animated by the same purpose. It may be
that they did not intend murder, but the evidence seems
clear that they were acting with a common design and to-
gether. Just what each was doing it is impossible to tell.
The accused was a prominent actor in the affray, and more
than any other was actuated by a malevolent purpose. We
are well satisfied that there is evidence to support the ver-
dict, and that the instruction requested was properly re-
fused.

The second, third, fourth, fifth, and sixth instructions re-
quested relate to the presumption of innocence and the de-
gree of proof required to overcome it. The court charged
the jury at length on this feature of the case, and, as we
believe, covered every essential element included in the de-
fendant's requests proper to have been given. The charge
was strictly in accord with the rules laid down in *Emery
v. State*, 101 Wis. 627, and reaffirmed in *Murphy v. State*,
108 Wis. 111, and as favorable to the accused as the law
would warrant.

Exception was taken because the court refused to give the
following instructions:

"(7) In cases of this kind it is incumbent upon the state to establish beyond a reasonable doubt, not only the fact of the death of the deceased, but also the fact that death resulted from the act of the defendant.

"(8) You are instructed that even though the defendant and the deceased quarreled and the deceased was struck by the defendant, yet, unless by the evidence it is established beyond a reasonable doubt that the blows dealt by the defendant caused the death of the deceased, it is your duty to acquit him."

The evidence is beyond dispute, as we view it, that the fatal blow was given while the accused, and others with him, were engaged in the affray which occurred just before the deceased ran away and fell near the railroad track. That the accused was engaged in that affray with some half a dozen others seems equally certain. The question for the jury was whether the accused, with others, was acting with a common design to commit an unlawful assault and battery of a sort to endanger life, so that if death ensued they would have been guilty of murder at common law, within the meaning of the statute. The idea of the counsel seems to have been that, unless it was shown that the accused struck the fatal blow, he could not be found guilty. In 1 Hale, P. C. 441, it is said:

" If divers persons come in one company to do any unlawful thing, as to kill, rob, or beat a man, or to commit a riot, or do any other trespass, and one of them in doing thereof kill a man, this shall be adjudged murder in them all that are present of that party abetting him and consenting to the act, or ready to aid him, although they did but look on."

A similar rule is stated in 1 East, P. C. 257, as follows:

' When divers persons resolve generally to resist all opposers in the commission of any breach of the peace, and to execute it with violence, or in such a manner as naturally tends to raise tumults and affrays, as by committing a violent disseisin with great numbers, or by going to beat a man, or rob a park, or standing in opposition to the sheriff's posse, they must at their peril abide the event of their actions.'

And, if in doing any of these or similar acts any person

interfering with them is killed, all who took part in the fact or abetted the act are guilty of murder. *Comm. v. Campbell*, 7 Allen, 541; *Miller v. State*, 25 Wis. 384–388. Again, 1 Bishop, Cr. Law, § 636, says:

"Since one may be guilty of a wrong he did not intend, not being of the special sort requiring a specific intent, if, when persons combine to do an unlawful thing of the former class, the act of one of them, proceeding according to the common plan, terminates in a criminal result not meant, all are liable."

It is true that a person cannot be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense, unless committed by his own hand, or by some one acting in concert with him, or in furtherance of a common object or purpose. If one is present, and aids or abets in an unlawful attack, he becomes a principal, and if the other elements mentioned concur he becomes liable for the result, the same as if he struck the fatal blow. The court submitted these facts to the jury, under instructions requiring them to find their existence before a verdict of guilty should be declared. This seems to satisfy the demands of the law. The instructions requested ignore the entire theory upon which the guilt of accused was predicated. The facts before stated indicate very clearly the theory upon which the prosecution was based and submitted.

It is further insisted that the instructions should have been given because of a statement made by the attorney representing the state at the opening of the trial that it would be shown that the deceased came to his death by " external violence inflicted by the defendant." Mr. Grady, counsel for the accused, then remarked: " I think in cases of this kind, when two causes are alleged, that the state must elect upon which cause of death they will proceed." The court replied: " I think they may bring out the proof as to the cause of death." If it appeared that counsel for the accused

had been misled by the statement of the state's attorney, a very serious question might arise. It seems quite evident that he did not understand that an election had been made, because he entered an exception to the ruling of the court for his failure to require such election. No objections to the testimony tending to show the exact situation and condition of the parties are preserved, and we are unable to discover any prejudicial result to the accused.

A further contention is that there could be no conviction of manslaughter in the first degree. This is upon the theory that one who stabs another in a vital part of the body must be held to have intended to kill. This contention ignores the evidence as to the situation and conduct of the parties. If the specific intent had been found, there was evidence from which a conviction for a higher grade of crime might have been supported. The question of intent was of significance, and was made prominent to the jury by the court's instructions. They were told, in effect, that if the killing was unintentional, and under such circumstances, mentioning them, as to be murder at the common law, they might find the accused guilty of this degree of manslaughter. The question of intent is not to be judged from the act alone. It is to be gathered from all the surrounding circumstances. The use of a knife did not show conclusively that murder was intended. In *State v. Hammond*, 35 Wis. 315, the defendant used a revolver, the bullet entering the head of deceased. He was found guilty of murder in the third degree. There was no proof showing that the defendant was engaged in the commission of any felony other than that involved in the shooting. The case was reported to obtain a determination whether that situation warranted such conviction. The language of the court is as follows:

"Keeping in mind that the defendant did not design to kill the deceased, what is there in the manner in which his death was produced to warrant the inference that the de-

fendant intended to inflict any one of such specific injuries?
We find nothing therein, or in any of the circumstances of
the case, which shows, or tends to show, any specific intent.
Doubtless it may be reasonably inferred that the defendant
was intending to commit an assault and battery upon the
deceased, and was in the act of so doing when he killed the
latter. In such case a conviction for manslaughter in the first
degree might be sustained. *Rowan v. State*, 30 Wis. 129."

The jury having negatived the intent to kill, and having
found that the homicide occurred while an assault and bat-
tery was being committed on deceased, and under such cir-
cumstances as that the killing would have been murder at
the common law, we see no reason for disturbing that con-
clusion.

When the accused was brought up for sentence, the dis-
trict attorney said: "I desire to say that I understand that
the defendant in this case has been committed to state prison,
and that he has an unfavorable record all over the state, and
should have a severe penalty;" to which exception was taken.
Counsel for accused mentioned the fact that his client had
been in prison for some months, and urged the minimum
penalty. In passing sentence the trial judge made no refer-
ence to the remarks of the district attorney, and no inquiries
as to the fact. He reviewed the circumstances of the crime,
and said he would take into consideration the time the ac-
cused had spent in jail. Counsel now predicate error on the
statement of the district attorney. It is not shown that the
statement was false, or that it in the least influenced the
judge in making up his judgment. In the language of the
supreme court of Georgia in *Mallory v. State*, 56 Ga. 545:
" The *quantum* of punishment, within the statute, is a ques-
tion peculiarly within the province of the judge who tries
the case, and it should not be interfered with unless very
grossly abused." We see no evidences of such abuse in this
case.

*By the Court.*— The judgment is affirmed.