ARNOLD, Sheriff Plaintiff in error, vs. SCHMIDT, Defendant in error.

*October 28—November 18, 1913.*

Habeas corpus: *What errors available: Abuse of writ: Imprisonment: When term commences: Physicians and surgeons: Osteopathy: Unlicensed practice: Chiropractice: Statutes: Validity: Constitutional law.*

1. Error in dismissing the appeal of a convicted person is not available on writ of *habeas corpus*.
2. Where, after sentence of imprisonment, a convicted person appealed and no commitment was issued and he was not in fact imprisoned pending such appeal, his term of imprisonment did not begin until he was taken into custody on a commitment thereafter issued.
3. Upon a criminal complaint charging that defendant unlawfully practiced osteopathy and for a fee or compensation prescribed and applied osteopathic manipulation without having obtained a license authorizing him so to do, the court had jurisdiction

to determine whether the so-called chiropractic manipulation which defendant prescribed and practiced was in fact a branch of osteopathy within the meaning of secs. 1435b, 1435e, Stats.; and the error, if any, in holding that it was such a branch was not a jurisdictional error, available on writ of *habeas corpus.*

4. Under secs. 3408, 3410, Stats., where a writ of *habeas corpus* is applied for by a person who has been committed or detained by virtue of a final judgment of conviction, the writ should be refused if it appears that such judgment was rendered by a court of competent jurisdiction; and where this does not appear until the hearing the writ should be quashed and the prisoner remanded.

5. *Habeas corpus* is in its nature a summary proceeding, and it is an abuse of the writ to issue it, remand the accused to the custody of his attorney or permit him to go at large on his own recognizance, and then hold the cause for several months under consideration.

6. One who, never having applied for a license, is convicted of practicing osteopathy without a license, cannot in a proceeding by *habeas corpus* raise the question of the validity of sec. 1435b, Stats., so far as it prescribes qualifications for entering upon the study of osteopathy.

7. The legislature has power to require persons practicing osteopathy to obtain a license, and to enforce such requirement by fine and imprisonment for practicing without a license.

8. The fact that such a statute is limited to persons practicing for a fee does not render it invalid, that being a legitimate ground of classification.

ERROR to review an order of the circuit court for Milwaukee county discharging the defendant in error on *habeas corpus:* LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

For the plaintiff in error there was a brief by *A. C. Umbreit,* attorney, *E. J. Yockey,* district attorney for Milwaukee county, and the *Attorney General,* and oral argument by *Mr. Umbreit.*

For the defendant in error there was a brief by *H. L. Eaton,* attorney, and *Jared Thompson, Jr.,* of counsel, and oral argument by *Mr. Eaton.*

There was also a brief by *Morris & Hartwell, amici curiæ.*

TIMLIN, J.   On February 14, 1912, complaint was made to the district court of Milwaukee county charging that the defendant in error (hereinafter called defendant) did on February 12, 1912, in the county of Milwaukee unlawfully and without authority hold himself out to the public as a physician, surgeon, and osteopathist, and did then and there unlawfully and without authority in law practice medicine, surgery, and osteopathy, and did then and there for a fee and for a compensation prescribe and recommend for a like use and apply medical and surgical treatment and osteopathic manipulation for the cure and relief of wounds, bodily injuries, infirmities, and diseases, not then and there possessing and not having obtained a license authorizing him so to do, contrary to the statute, etc.   On this complaint a warrant was issued, the defendant arrested and brought before said court, and after trial found guilty "as charged in the complaint" and adjudged to pay a fine of $100 and costs and be committed to the house of correction of Milwaukee county at hard labor until said fine and costs were paid or discharged, but such imprisonment not to exceed in all thirty days. Thereafter and on February 28th next defendant filed with the clerk of said court a notice of appeal to the municipal court, attempting thereby to appeal from said judgment and sentence, together with a recognizance on said appeal.   While said cause was pending on this appeal in the municipal court and on June 14th next, the district attorney moved to dismiss the appeal, and on June 18, 1912, the appeal was by order dismissed.   The appeal was improperly dismissed, but that error is not available in this proceeding.   *State ex rel. Kassner v. Momsen,* 153 Wis. 203, 140 N. W. 1117.   The municipal court, however, held the case for further argument until October 8, 1912, when he ordered that all papers, files, and records in the cause be remanded to the district court of Milwaukee county.   On the date last mentioned the last

named court issued a commitment committing the defendant to the house of correction "until such fine and costs are paid or until he shall be thence discharged by due course of law," but not to exceed thirty days. Under such circumstances the term of imprisonment had not expired and did not begin until defendant was taken on the commitment. *State ex rel. Kassner v. Momsen, supra.* Defendant was taken in custody on this commitment by the plaintiff in error (hereinafter called plaintiff), whereupon defendant at once procured a writ of *habeas corpus* from the circuit court for Milwaukee county, and the latter court on January 22, 1913, in proceedings upon said writ, discharged the defendant from custody on the ground that his imprisonment was illegal. Between the time of the issuing of the writ of *habeas corpus* on October 8, 1912, and the order of discharge on January 22, 1913, the defendant was in the custody of his attorney by order of the court and was not in the custody of the sheriff of Milwaukee county or any other peace officer or keeper of the common jail or in other place of incarceration.

The plaintiff contends that the discharge was illegal and unauthorized because the circuit court considered the evidence taken on the trial, the transcript of which was attached to and made part of the petition for *habeas corpus,* and therefrom concluded that there was no evidence tending to show the defendant guilty of any offense. The defendant maintains the right and duty of the circuit court to so examine the evidence and decide thereon in a *habeas corpus* proceeding. Counsel substantially agree that there was evidence that the defendant for pay treated a person claiming to be suffering from some ailment by rubbing or manipulating the spine of such person. They agree further that the defendant claimed to be acting as a "chiropractic" in so doing. The statute (sec. 1435*b*) provides for licensing all persons practicing medicine, surgery, or osteopathy in any of their branches in this state, and further (sec. 1435*e*) that any person begin-

ning such practice without having obtained such license, etc., shall be punished by fine, etc.

If the complaint had charged that the defendant carried on business as a chiropractic and did for a fee or compensation prescribe or recommend chiropractic manipulation, it is probable the complaint would state no offense; but if to this were joined an averment that that which the defendant practiced and carried on and prescribed was in fact a branch of osteopathy, although defendant called it by the other name, the complaint would be good. So under the complaint in the instant case and the evidence the district court had jurisdiction to decide this very question. He might have been convinced that the defendant was practicing osteopathy notwithstanding defendant chose to call it by another name. The district court had jurisdiction to construe this statute, and if he erred in his construction so as to make the term "osteopathy" cover more than it should cover and include the quite similar acts done by the defendant, that was not jurisdictional error. The remedy for such error in that court is by appeal. There is considerable confusion in the cases relative to what deficiencies in evidence may be reviewed on *habeas corpus.*

It is unprofitable to consider the conflict of authority existing elsewhere. The rule of law for this state is found in *State ex rel. Durner v. Huegin,* 110 Wis. 189, at page 237 (85 N. W. 1046).

In *habeas corpus:* "The reviewing court, in the exercise of its function, must necessarily pass upon and reverse or affirm the decision of the committing magistrate, if such matters are properly presented for its consideration, according to its determination thereof, and in doing so it does not go beyond jurisdictional defects. It can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. It cannot go beyond that and weigh the evidence. . . . When it has discovered that there was compe-

tent evidence for the judicial mind of the examining magistrate to act upon in determining the existence of the essential facts, it has reached the limit of its jurisdiction on that point. If the examining magistrate acts without evidence, he exceeds his jurisdiction; but any act, upon evidence worthy of consideration in any aspect, is as well within his jurisdiction when he decides wrong as when he decides right."

The foregoing states the rule with reference to review on *habeas corpus* of the decision of the examining magistrate in proceedings for the arrest and examination of offenders and in analogous cases.   The scope of review on the writ could not exceed this in any case.   Where as in the instant case there was a trial and final judgment of conviction, this rule is affected by sec. 3408, Stats., which provides that no person shall be entitled to prosecute the writ of *habeas corpus* who shall have been committed or detained by virtue of the final judgment or order of any competent tribunal of civil or criminal jurisdiction or by virtue of any execution issued upon such order or judgment.   The application for the writ is by sec. 3410 required to state that the person restrained of his liberty is not committed or detained by virtue of any process, judgment, order, or execution specified in sec. 3408.   When it appears that the conviction is by a judgment of a court of competent jurisdiction, the judge or court to whom application is made should refuse the writ in the first instance, and where this does not appear until the hearing he should quash the writ and remand the prisoner.   *In re Murphy,* 148 Wis. 292, 134 N. W. 823.

We cannot approve the delay which was permitted in the instant case on the hearing.   *Habeas corpus* is in its nature a summary proceeding, and it is an abuse of the writ to issue it, remand the accused to the custody of his attorney or permit him to go at large on his own recognizance, and then hold the cause for several months under consideration.   We appreciate the known learning and devotion to duty of the learned circuit judge, and it may be that he was impressed

with the severity of the proceedings against the defendant, the improper dismissal of the appeal, and the zeal with which he was prosecuted and the probable animus of the prosecution, and was anxious to find some way to mitigate the rigor of the law, but this must be done at the trial and by proper instructions to the jury and not by an abuse of the writ of habeas corpus. Nothing tends more strongly to bring the administration of the law into disrepute or to make a mere "scarecrow of the law" than to see convicted persons enjoying the same privileges as other citizens, parading their immunity before the public, and treating the public laws with open scorn or contemptuous indifference. Cities in this country might be named where the abuses which have grown up in habeas corpus proceedings are so flagrant as to threaten the continued existence of the power to issue the writ.

The statute under which the defendant was prosecuted, so far as relevant here, on its face purports to prescribe qualifications for and to authorize the licensing of persons practicing medicine, surgery, or osteopathy, and imposes penalties for unlicensed practice. In this case we need only consider the charge of practicing osteopathy for a fee without having a license or certificate of registration.

Osteopathy is defined in Webster's New International Dictionary as "a system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels, and other tissues, and can be remedied by manipulations of these parts."

Chiropractice appears to be a newly coined compound word suggesting hand practice. To plaintiff's counsel it means an operation or manipulation founded in ignorance, ineffectual in results, and propagated and spread by fraud, while to defendant's counsel it indicates a very simple and beneficial massage of the spine. The state may well require a license for the purpose of regulation and it may prescribe reasonable qualifications of the licensee, having reasonable relation to the

business or profession of osteopathy, understanding the latter as above defined. Some of the qualifications required in the case of osteopaths seem quite extreme, but we must grant something to the judgment of the legislature, and people must learn to hold their legislators responsible for unwise or extreme laws which are nevertheless constitutional. Whether the art of chiropractice is within the statute against practicing osteopathy is, under the foregoing circumstances, a question of fact to be proven by an authentic description of the former, and that question does not arise upon this record.

We do not think the validity of the statute, so far as it prescribes qualifications for entering upon the study of osteopathy, are before us. The defendant, not having applied for a license, cannot raise that question. There cannot be much doubt that the legislature possesses the general power to require persons practicing osteopathy as above defined to obtain a license. Consequently it has the power to enforce this requirement by fine and imprisonment for practicing without a license. It does not invalidate the statute that it is limited to persons practicing for a fee. That is a legitimate ground of classification. *Ex parte Collins,* 57 Tex. Crim. 2, 121 S. W. 501; *Watson v. Maryland,* 218 U. S. 173, 30 Sup. Ct. 644; *Collins v. Texas,* 223 U. S. 288, 32 Sup. Ct. 286.

*By the Court.*—The order discharging the defendant is reversed, and the cause remanded with directions to enter an order remanding the defendant to the custody of the sheriff under the commitment in question.