In re Carlson, 176 Wis. 538.

In re CARLSON.    [Habeas corpus.]

*December 16, 1921—April 11, 1922.*

*Criminal law: Murder: Aiders and abettors: Indictment or information: Certainty: Sufficiency: Necessity of words "malice aforethought" or equivalent: Jurisdiction of court if no crime stated: Plea of guilty to information not charging murder: Validity of sentence: Review.: Habeas corpus not remedy: Procedure upon plea of guilty.*

1. In this state murder is recognized, treated, and punished as an offense by the common law, of which the statute is merely declaratory.
2. Under secs. 4613 and 4614, Stats., one aiding or abetting another in the commission of a felony is guilty as a principal.
3. The word "wilful" in an information does not supply the necessary element of premeditation required to charge murder in the first degree, the words "malice aforethought" being required by the statute as well as by the common law.
4. Under sec. 7, art. I, Const., the accused is entitled to know with what he is charged; and not only must all the facts and circumstances which constitute the offense be stated in the indictment or information, but they must be stated with such

certainty and precision that the defendant may be able to judge whether they constitute an indictable offense, in order that he may demur or plead and prepare his defense and be able to plead the conviction or acquittal in bar of another prosecution.

5. Jurisdiction to try and punish for crime cannot be acquired otherwise than in the mode prescribed by law; and where the complaint, indictment, or information is invalid, the court is without jurisdiction.

6. The information in this case, charging the accused with unlawfully and feloniously aiding another in committing the felonious and wilful murder of deceased, being insufficient to charge murder in the first degree, does not include and charge murder in the second and third degrees where it contains no apt language charging such lower degrees.

7. Although sec. 4660, Stats., provides that in indictments or informations for manslaughter it shall be sufficient to charge that the accused did feloniously kill and slay the deceased, an information may be good though it does not use the language of that section; and an allegation that the petitioner aided another in wilfully and feloniously murdering the deceased, which includes every element in the statutory language, charges the defendant with first-degree manslaughter.

8. An accessory before the fact must be prosecuted as such; but one present aiding and abetting in the commission of a felony may be convicted as a principal although only guilty of assisting in committing the offense.

9. Where an information charges an offense, the court, having jurisdiction of the defendant and the subject matter, could proceed; but where it failed to charge the commission of murder in the first degree, the judgment of conviction thereof upon the defendant's plea of guilty was clearly erroneous.

10. Under such circumstances a judgment of conviction of first-degree murder upon a plea of guilty which was erroneous, but not beyond or without the court's jurisdiction, cannot be reached in a proceeding in *habeas corpus.*

11. Where the information did not charge murder in the first degree, but defendant was convicted thereof upon a plea of guilty, he was entitled to a review by writ of error under sec. 21, art. I, Const.; and if, by reason of his neglect or want of knowledge as to his rights, the defendant has been unjustly punished, he may appeal to the governor of the state, who could relieve from unjust or excessive punishment, under sec. 6, art. V, Const.; but the merits of the case cannot be reviewed by *habeas corpus.*

12. The right of the accused to be heard as to whether he has anything to say why sentence should not be pronounced against him is not a mere formality.

13. In accepting a plea of guilty under sec. 4712, Stats., and award-
    ing a sentence thereon, where the information charges an
    offense which includes others the court should adjudge the
    defendant guilty, stating the offense, though this may not be
    technically necessary.

BY A WRIT of *habeas corpus* issued out of this court on
the 30th day of November, 1921, the warden of the state
prison at Waupun was required to bring the petitioner, *Carl
O. Carlson,* before this court on the 16th day of Decem-
ber, 1921, and to show the time and cause of the imprison-
ment of the said *Carl O. Carlson.* In response to the writ
Warden R. M. Coles produced the prisoner and alleged that
he held the prisoner in custody by virtue of a certain com-
mitment issued by Benjamin M. De Diemar, clerk of the
circuit court for Kenosha county, on the 8th day of De-
cember, A. D. 1919, by which he was commanded to take
and hold the body of said *Carl O. Carlson* and him safely
confine at hard labor in the state prison at Waupun, Wis-
consin, pursuant to a judgment of sentence and conviction
rendered in and by the circuit court for the county of Keno-
sha, in the state of Wisconsin, on the 8th day of Decem-
ber, A. D. 1919. Attached to the writ was a certified copy
of the minutes of the clerk of the circuit court at Kenosha
county, as follows:

"Court opens Monday, December 8, 1919, at 10 a. m.
"Present: Hon. W. B. QUINLAN, Judge, presiding.

      "Reporter, J. M. Carney.
      "Clerk, Benj. M. De Diemar.
      "Officer, Alex Ritter.

"State of Wisconsin ⎱ State of Wisconsin represented by
      vs. ⎰    Peter Fisher, Jr., District Attor-
"Carl O. Carlson.    ney.
               Defendant in court in person and in
                 custody.
               Defendant *Carl O. Carlson* arraigned
                 and information read to defend-
                 ant, to which he pleads 'Guilty.'

"The court pronounces the following sentence:
"It is the judgment and sentence of the court that you,
*Carl O. Carlson,* be punished by confinement at hard labor

in the state prison at Waupun, Wisconsin, for and during the remainder of your natural life, beginning at noon today, the first day of each year of such confinement to be solitary."

From the petition it appears that the information upon which the plea of guilty was entered is as follows:

"I, Peter Fisher, Jr., district attorney for Kenosha county, state of Wisconsin, do hereby inform the court that on the 31st day of March, A. D. 1919, at the city and county of Kenosha, Wisconsin, *Carl O. Carlson,* defendant, did unlawfully and feloniously aid one Earl Loveday in the commission of an offense which under the laws of the state of Wisconsin is a felony, to wit, the felonious and wilful murder of one Antonio Pingitore by the said Earl Loveday by counseling and being in company with the said Earl Loveday in the commission of such felony, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Wisconsin."

It further appears from the petition and the return that upon the judgment and sentence of the circuit court a commitment was issued in due form; that the petitioner was conveyed to the state prison at Waupun and committed to the custody of the warden of the state prison at Waupun, and that he was detained in said prison under and by virtue of said commitment. Upon the return being made the petitioner demurred to the return, oral argument was had, and briefs filed.

*John W. Wegner* and *F. J. Walthers,* both of Milwaukee, for the petitioner.

On behalf of the Warden of the State Prison there were briefs by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *M. E. Walker,* special prosecutor for Kenosha county, and *Frank M. Symmonds,* district attorney of Kenosha county, and oral argument by *Mr. Messerschmidt* and *Mr. Symmonds.*

On December 28, 1921, the court directed that further briefs be filed upon the following propositions:

*First.* Assuming that the information does not charge the defendant with aiding in the commission of the crime

of murder in any degree, does it charge the defendant with the crime of aiding in the commission of manslaughter, and, if so, in what degree?

*Second.* Assuming that the information charges the defendant with aiding in the commission of some degree of manslaughter, is the sentence imposed merely excessive or is it a sentence imposed for a different offense?

*Third.* Did the failure of the court to specifically find the defendant guilty upon his plea of guilty deprive the court of jurisdiction to impose a sentence conclusive as to legality and justice under the provisions of sec. 3428, Stats.?

The following opinion was filed February 7, 1922:

ROSENBERRY, J.    The petitioner alleges that the commitment is void and assigns four grounds upon which the allegation is based:

First. Because the information does not charge the defendant with first-degree murder as defined by our statute.

Second. That the plea of guilty does not supply nor cure this defect.

Third. That the court has no jurisdiction of the premises to pronounce sentence as it did under the information.

Fourth. That the court had no jurisdiction in the premises.

We shall first consider whether the information charges *Carl O. Carlson* with murder in the first degree, for if he aided and abetted another in the commission of the offense charged, under our law he is guilty as a principal.    Secs. 4613 and 4614, Stats.

Sec. 4660, Stats.    "In indictments or informations for murder or manslaughter it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in any indictment or information for murder to charge that the accused did wilfully, feloniously and of his malice aforethought kill

and murder the deceased; and in any indictment or information for manslaughter it shall be sufficient to charge that the accused did feloniously kill and slay the deceased."

The language used in the information is "the felonious and wilful murder of one Antonio Pingitore." The question presented is, Are the words "the felonious and wilful murder" equivalent to the language of sec. 4660, which requires the information to charge that the accused "did wilfully, feloniously and of his malice aforethought kill and murder" Antonio Pingitore? Prior to 1531 there was in England only one form of felonious homicide, being that now known as manslaughter. In this was included the malicious killing, since termed murder. By the statute of 23 Henry VIII, c. 1, par. 3, there was taken from those who committed wilfully and of malice aforethought benefit of clergy, and to this offense the name of murder was subsequently given, and upon this statute the distinction between murder and manslaughter has ever since rested, both in England and in this country. 3 Bishop, New Crim. Proc. (2d ed.) p. 1527. Thereafter in indictments the phrase "wilfully and of malice aforethought" was used to distinguish indictments for murder from those for manslaughter, "for," says Hawkins, "unless these words appear the offender was entitled to benefit of clergy. In other words, the charge was only manslaughter." 2 Hawkins, P. C. c. 33, sec. 25. While in the statute of 23 Henry VIII the word "wilfully" appears with the words "and of malice aforethought," in the subsequent statute, 1 Edward VI, c. 12, par. 10, which is a re-enactment of the statute of Henry VIII, the word "wilfully" was omitted for the reason that it was included within the term "malice aforethought." It has been held in a large number of cases that the words "malice aforethought," or their equivalent, are indispensable to an information or indictment charging murder in the first degree. 3 Bishop, New Crim. Proc. (2d ed.) p. 1552, and

cases there cited. See *Nicholson's Case,* 1 East, P. C. 346; *Etheridge v. State,* 141 Ala. 29, 37 South. 337; *Comm. v. Davis,* 11 Pick. 432; *Comm. v. Webster,* 5 Cush. 295, 52 Am. Dec. 711; *Comm. v. Chapman,* 11 Cush. 422; *State v. Brown,* 168 Mo. 449, 68 S. W. 568; *State v. Woodward,* 191 Mo. 617, 90 S. W. 90.

In this state murder is recognized, treated, and punished as an offense by the common law of which the statute is merely declaratory. *Hogan v. State,* 30 Wis. 428, at p. 435; *Pliemling v. State,* 46 Wis. 516 (1 N. W. 278) at p. 519.

In *State v. Fee,* 19 Wis. 562, it was held that in indictments for murder it must be stated that the defendant feloniously, of his malice aforethought, did kill and murder deceased, for without the terms "malice aforethought" and the artificial phrase "murder" the indictments will be taken to charge manslaughter only. Under some statutes the words "of malice aforethought," or their equivalent, have been dispensed with. *Johnson v. People,* 33 Colo. 224, 80 Pac. 133; *Williams v. State,* 45 Fla. 128, 34 South. 279; *Lindsey v. State,* 69 Ohio St. 215, 69 N. E. 126; *State v. Johnny Tommy,* 19 Wash. 270, 53 Pac. 157.

In *Allen v. State,* 85 Wis. 22, 54 N. W. 999, the word "wilfully" appears to have been omitted from the information in the case. The court says:

"This is one of the few technical words which the statute (sec. 4660, R. S.) retains, and seems to indicate as necessary in an information for murder. What effect this omission might have even were the verdict complete, was not discussed and is not necessary to be decided, but we deem it proper to call attention to the omission."

By ch. 137 of the Laws of 1871 (now sec. 4669, Stats.) it was held when the offense charged has been created by any statute or the punishment of such offense has been declared by any statute, the indictment or information shall, after verdict, be held sufficient to warrant the punishment prescribed by the statute if it describe the offense in the

words of the statute or in words of substantially the same meaning.    It was held in *Kilkelly v. State,* 43 Wis. 604, that the act did not dispense with the necessity of averring in an indictment or information for murder that the accused did wilfully, feloniously, and of his malice aforethought kill and murder the deceased.

Wilfully, when used in the description of criminal acts, involves evil intent or legal malice (*Brown v. State,* 137 Wis. 543, 119 N. W. 338), as well as knowledge of the character of the act or intent to do it.    It has not, however, been held that it includes the element of premeditation essential to charge murder in the first degree.    The words "malice aforethought," or their equivalent, being by the statute as well as by the common law essential to an indictment or information for murder, we cannot, either upon reason or authority, hold that the use of the word "wilful" supplies the necessary element of premeditation, which must always be present in a valid information or indictment for murder in the first degree.    While the conclusion reached by this court in *Hogan v. State,* 30 Wis. 428, that the words "of malice aforethought" are sufficient to charge the necessary element of premeditated design, may be subject to some criticism (3 Bishop, New Crim. Proc. (2d ed.) § 575), it is nevertheless the established law of this state, and in this opinion the words "malice aforethought" are used as including under our statute the element of premeditated design when used in discussing the sufficiency of an information under our law.

It is considered, therefore, that the information in this case did not charge the accused with aiding and abetting the commission of the crime of murder in the first degree. We must therefore consider whether or not it charged the defendant with aiding or abetting the commission of homicide in any degree, either of murder or manslaughter, for if the information charged no offense the court had no jurisdiction to proceed to judgment.

Sec. 7, art. I, of the constitution provides:

"In all criminal prosecutions the accused shall enjoy the right . . . to demand the nature and cause of the accusation against him."

"It is an elementary rule of criminal law that not only must all the facts and circumstances which constitute the offense be stated in an indictment, but they must be stated with such certainty and precision that the defendant may be enabled to judge whether they constitute an indictable offense or not, in order that he may demur or plead to the indictment accordingly, prepare his defense, and be able to plead the conviction or acquittal in bar of another prosecution for the same offense. And our bill of rights secures to the accused the right to 'demand the nature and cause of the accusation against him.'" *Fink v. Milwaukee,* 17 Wis. 26.

By art. V of the amendments to the constitution of the United States it is provided that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." It has been held that the indictment referred to is the presentation to the proper court, under oath, by a grand jury duly impaneled, of a charge describing an offense against the law for which the party may be punished. *Ex parte Bain,* 121 U. S. 1, 7 Sup. Ct. 781.

In *Ex parte Bain* the court says:

"Upon principles which may be considered to be well settled in this court, it can have no right to issue this writ [*habeas corpus*] as a means of reviewing the judgment of the circuit court, simply upon the ground of error in its proceedings; but if it shall appear that the court had no jurisdiction to render the judgment which it gave and under which the petitioner is held a prisoner, it is within the power and it will be the duty of this court to order his discharge."

The indictment was amended by striking out the words "the comptroller of the currency and." The court held that this amendment so affected the indictment that the indictment upon which he was tried, the amended indictment,

was not the indictment rendered by the grand jury. The court says:

"It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the constitution, can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned." *Ex parte Bain*, 121 U. S. 1, 7 Sup. Ct. 781.

Art. V does not apply to state courts, but the decision is entitled to great weight; for while the language of our constitution and the constitution of the United States is different, the right guaranteed is the same in each, that is, the right of the accused to know with what crime he is charged.

Jurisdiction to try and punish for a crime cannot be acquired otherwise than in the mode prescribed by law. A formal accusation is essential for every trial of a crime. Without it the court acquires no jurisdiction to proceed, even with the consent of the parties, and where the indictment or information is invalid the court is without jurisdiction. 16 Corp. Jur. p. 176, § 230, and cases cited; 22 Cyc. 171, 172, and cases cited.

Language is used in *Petition of Semler*, 41 Wis. 517, which is not in harmony with the authorities referred to. In that case the petitioner was charged with the crime of embezzlement. An information was filed containing three counts. At a subsequent term the third count was *nolled* and the petitioner moved to quash the first two counts for the reason that they charged no offense. There was an examination, the petitioner was held to appear in the circuit court, and entered his recognizance with sufficient sureties.

The circuit court required additional bail, which the petitioner failed to furnish, and he was thereupon imprisoned. The petitioner claimed that his imprisonment was illegal in that the first and second counts of the information did not charge him with the commission of any offense. In this case this court declined to consider whether or not the information stated an offense. The court said:

"There can be no doubt that the circuit court had jurisdiction of the person of the petitioner, and of the offense charged in the information. But it is claimed that the first and second counts in the information charged no offense; in other words, that the information is insufficient, and that the motion to quash for that reason should be sustained. This may be at once conceded, but what follows? Manifestly this, that the circuit court. gave a wrong decision where it clearly had jurisdiction, in holding a defective information good. The court committed an error, but there is no ground for saying it acted without jurisdiction in rendering its decision."

In *State ex rel. Durner v. Huegin,* 110 Wis. 189, 236, 85 N. W. 1046, the court held that whether or not the complaint charges an offense is a jurisdictional matter.

"While it is true that such writ [*habeas corpus*] never takes the place of a writ of error, and is confined to jurisdictional defects, when it is resorted to merely for the purpose of liberating a person detained in custody to await his trial on a charge of being guilty of a criminal offense, the questions of whether there was any evidence for the magistrate to act upon and *whether the complaint charges any offense known to the law are jurisdictional matters.*"

We shall not discuss the matter further than to say that, in order to invoke the jurisdiction of the court, there must be before the court a complaint, information, or indictment which charges some offense known to the law.

The information is not sufficient to charge petitioner with aiding Earl Loveday in committing murder either in the second or third degree. Not being sufficient to charge

murder in the first degree, which, if properly charged, would include murder in the second and third degrees and the various degrees of manslaughter, it contains no apt language to charge the lower degrees of murder as defined by our statute.

While the language of sec. 4660, Stats., is that it shall be sufficient in any information for manslaughter to charge that the accused did feloniously kill and slay the deceased, it is well settled that an information may be good although it does not use the language of the statute.   Sec. 4669, Stats. The allegation of the information is that the petitioner aided Earl Loveday in the felonious and wilful murder of Antonio Pingitore.   It must be held, both upon reason and authority, that a charge that one did feloniously and wilfully murder another includes every element to be found in the statutory language "did feloniously kill and slay another."   *State v. Fee,* 19 Wis. 562.   The information therefore charges the petitioner with aiding in the commission of the crime of manslaughter in the first degree.   At common law it was held that by reason of the nature of the offense there could be no deliberation or premeditation in manslaughter; there could, therefore, be no accessory before the fact (1 Hale, P. C. 616; *Adams v. State,* 65 Ind. 565), although there were exceptions to the rule.   *Reg. v. Gaylor,* 7 Cox, C. C. 253.   See, also, *People v. Newberry,* 20 Cal. 439; *Stipp v. State,* 11 Ind. 62; *State v. Bogue,* 52 Kan. 79, 34 Pac. 410. There is, however, a clear distinction between an accessory before the fact and one who aids and abets in the commission of an offense.   In this state an accessory before the fact must still be prosecuted as such.   *Karakutza v. State,* 163 Wis. 293, 156 N. W. 965.   On the other hand, it is equally well settled that one who is present aiding and abetting in the commission of a felony may be informed against as a principal and convicted as a principal, although he may have been guilty only of assisting in the commission of the offense.   *Vogel v. State,* 138 Wis. 315, 119 N. W.

190.   Under sec. 4346, Stats., it is held that a participant in an affray who acted with others in committing an assault and battery upon the deceased may be guilty of man-slaughter in the first degree even though he did not strike the fatal blow.   *Hayes v. State,* 112 Wis. 304, 87 N. W. 1076.

The information in this case charges the commission of an offense, and the court having jurisdiction of the person of the defendant and jurisdiction of the subject matter had jurisdiction to proceed.   Upon the petitioner's plea of guilty the court adjudged him guilty of murder in the first degree and sentenced him accordingly.   The information not charging the petitioner with aiding and assisting in the com-mission of the crime of murder in the first degree, the judg-ment and sentence of the court was clearly erroneous.   The question then arises, Was the act of the court within its jurisdiction?   If it is merely erroneous and within the jurisdiction of the court, the question cannot be reached in a *habeas corpus* proceeding.   The statutes of this state prescribe plainly what questions may be considered upon the return of a writ of *habeas corpus.*

"Sec. 3427.   The court or judge must make a final order to remand the prisoner if it shall appear that he is retained in custody either:

"(1)  . . .

"(2)  By virtue of the final judgment or order of any competent court of civil or criminal jurisdiction or of any execution issued upon such judgment or order."

By sec. 3428 it is provided: .

"But no such court or officer, on the return of any such writ, shall have power to inquire into the legality or justice of any judgment, order or execution specified in the next preceding section" (sec. 3427).

In *Petition of Semler,* 41 Wis. 517, the nature of the writ of *habeas corpus* and its office under our law was fully inquired into.   It is there said:

"At the outset it may be observed that the principle is well

settled that a writ of *habeas corpus* does not have the scope,
nor is it intended to perform the office, of a writ of error or
appeal.   This doctrine is almost elementary in the law.   The
writ, then, cannot be resorted to for the purpose of review-
ing and correcting orders and judgments which are errone-
ous merely.   It deals with more radical defects, which go
to the jurisdiction of the court or officer, and which render
the proceeding or judgment void.   A distinction between a
proceeding or judgment which is void, and one that is void-
able only for error, is recognized in the cases, and must be
observed.   Says DIXON, C. J., in *Petition of Crandall,* 34
Wis. 177: 'It is conceded that for mere error, no matter
how flagrant, the remedy is not by writ of *habeas corpus.*
For error, the party imprisoned must prosecute his writ of
error or *certiorari.*   Nothing will be investigated on *habeas
corpus* except jurisdictional defects, or illegality, as some
courts and authors term it; by which is meant the want of
any legal authority for the detention or imprisonment.' "
See *In re Blair,* 4 Wis. 522; *In re O'Connor,* 6 Wis. 288; *In
re Perry,* 30 Wis. 268.

The court has applied this fundamental principle of law in
many cases.   In *State ex rel. Welch v. Sloan,* 65 Wis. 647,
27 N. W. 616, it appears that the relator, Welch, was con-
fined in the state prison at Waupun upon the final judg-
ment of the circuit court for Calumet county, in a criminal
action of *The State v. Welch,* upon an information for
murder.   It appears that the relator was arrested and pleaded
not guilty to the information, and upon the trial the jury
rendered a verdict by which they found the defendant
"guilty of murder as charged in the information against
him," and upon this verdict the court rendered judgment
that the relator be imprisoned in the state prison at Waupun
for his natural life.   He sued out a writ of *habeas corpus*
before the judge of the Thirteenth judicial circuit, and
upon the hearing the circuit judge remanded the prisoner,
and thereupon a writ of *certiorari* was issued out of this
court to review the proceedings and order of the circuit
judge upon the writ of *habeas corpus.*   It was the conten-
tion of the relator that the circuit court for Calumet county

had no authority or jurisdiction to pronounce the judgment it did, and that consequently the judgment of the circuit court showed no lawful cause for the imprisonment of the relator.    This contention was based upon two grounds: first, that the information in the action pending in Calumet county did not charge the relator with the crime of murder in the first degree, and therefore the court had no jurisdiction to pass a sentence punishing the relator for that crime; and second, if the information was sufficient to sustain a conviction for murder in the first degree, still the verdict of the jury did not find him guilty of that special crime and therefore there was no authority or jurisdiction in the court to pronounce the judgment it did in the case.    The information was in the form prescribed by sec. 4660 and was held sufficient, that question being ruled by *Hogan v. State,* 30 Wis. 428.

In support of the second proposition it was argued that, the verdict being a general verdict, it was insufficient to authorize the court to pass sentence and judgment against the relator, and *Hogan v. State, supra,* was relied upon. This court said:

"The contention that it was error to pass sentence upon such verdict may be admitted for the purposes of this case, although it does not appear from the opinion or the record in this court that the form of the verdict in the *Hogan Case* was the same as in the case at bar.    In the *Hogan Case* this court held that the judgment pronounced upon the verdict was erroneous, not that it was void, and the judgment was reversed, and a new trial ordered in the case.

"It is evident that the circuit court did not act without jurisdiction in pronouncing judgment upon the verdict rendered.    It was the duty of the court, upon the receipt of the verdict, either to pass judgment thereon, or to set it aside and order a new trial, as was done by this court in the *Hogan Case,* and not to discharge the defendant from custody.    Admit that the court erred in pronouncing judgment upon the verdict instead of setting the same aside, certainly the court in doing so had the power, and it was its duty, to

determine what should be done in the case then before it; and if the court erred in its determination it was simply an error arising in the progress of the case, and not an act beyond the power and jurisdiction of the court, as it must be to be taken advantage of upon a writ of *habeas corpus.*

"The defendant having been duly charged with the crime of murder in the first degree, and having been brought into the custody of the court, the court had full jurisdiction both of the subject matter of the action and of the person of the defendant, and, having rendered a judgment against the defendant which the law authorizes after trial and conviction, any errors of the court intervening before the sentence and judgment must be taken advantage of either by motion in the court where the trial is had, or upon writ of error or exceptions in the manner prescribed by the statutes. These facts appearing to the officer before whom the writ of *habeas corpus* is returnable, it is his duty to remand the prisoner, under the provisions of sub. 2, sec. 3427, R. S." *State ex rel. Welch v. Sloan,* 65 Wis. 647, 27 N. W. 616.

In *In re Graham,* 74 Wis. 450, 43 N. W. 148, the petitioners were charged with robbery, being armed with a dangerous weapon, and were convicted of the offense as charged. Graham was sentenced to imprisonment in the state prison for thirteen years and McDonald for fourteen years. The information was based upon sec. 4375, R. S., which provided that the guilty party "shall be punished by imprisonment in the state prison, not more than ten years, nor less than three years." The sentences being in excess of the period fixed by the statute, the petitioners applied for a writ upon that ground. The court said:

"We deny the writs for the reason that the error in the judgments does not render them void, or the imprisonment under them illegal, in that sense which entitles them to be discharged on a writ of *habeas corpus.* The judgments are doubtless erroneous, and would be reversed on writ of error. (Citing cases.) But the judgments are not void. *State ex rel. Welch v. Sloan,* 65 Wis. 647, 27 N. W. 616. The court had jurisdiction of the persons and subject matter or offense, but made a mistake in the judgment. For mere

error, no matter how flagrant, the remedy is not by *habeas corpus*. The law is well settled in this court that on *habeas corpus* only jurisdictional defects are inquired into. The writ does not raise questions of errors in law or irregularities in the proceedings."

This case was taken to the supreme court of the United States and affirmed in 138 U. S. 461, 11 Sup. Ct. 363. See, also, *Petition of Crandall,* 34 Wis. 177; *In re Roszcynialla,* 99 Wis. 535, 75 N. W. 167; also *Ex parte Tani* (29 Nev. 385, 91 Pac. 137), 13 L. R. A. N. s. 518, in which a large number of cases are reviewed. See, also, note, part 3, *In re Taylor,* 45 L. R. A. 136; *In re Cica* (18 New Mex. 452, 137 Pac. 598), 51 L. R. A. N. s. 373; also note L. R. A. 1916F, 967.

*State ex rel. Welch v. Sloan,* 65 Wis. 647, 27 N. W. 616, was expressly affirmed in *State ex rel. Dunn v. Noyes,* 87 Wis. 340, 58 N. W. 386, and also in *In re Shinski,* 125 Wis. 280, 104 N. W. 86. A distinction is made where a petitioner is held for trial by a committing magistrate and where the petitioner is detained in custody by virtue of the final order or judgment of a court having jurisdiction of the subject matter and the person. *State ex rel. Durner v. Huegin,* 110 Wis. 189 (85 N. W. 1046) at pp. 235–239. This distinction is based upon sec. 3408, Stats. *Arnold v. Schmidt,* 155 Wis. 55, 143 N. W. 1055. See, also, *In re Murphy,* 148 Wis. 292, 134 N. W. 823. Applying the law declared by these decisions, it is apparent in the instant case that when the information was filed charging the petitioner with homicide, it was within the jurisdiction of the circuit court, upon the petitioner entering a plea of guilty, to proceed to adjudge him guilty of murder in the first degree and sentence him accordingly, and while, as in the case of *Hogan v. State* and in the case of *State ex rel. Welch v. Sloan,* the conclusion reached by the circuit court was erroneous, it still was not beyond nor without its jurisdiction. Whether it be regarded, as in the *Semler Case,* 41 Wis. 517, as an erro-

neous conclusion, or be regarded as an excessive sentence, as in the case of *In re Graham,* 74 Wis. 450, 43 N. W. 148, it is in both aspects an error which the court committed within the exercise of its jurisdiction, and therefore under our statutes, which are merely declaratory of the common law, it is the duty of this court to remand the petitioner.

The petitioner in this case was not without remedy. The error would no doubt have been promptly corrected had it been called to the attention of the trial court, and failing that, there was open to the petitioner a review by writ of error, which, by sec. 21, art. I, of our constitution, shall never be prohibited by law. The merits of this case are not in any way before us for review. The record is silent as to the circumstances attending the commission of the crime with which the petitioner is charged. If by reason of his neglect, or want of knowledge as to his rights, the petitioner has been unjustly punished, or his punishment is, in view of all the circumstances, excessive, sec. 6 of art. V has vested with the governor of this state the power to relieve the petitioner. It is only after a long and exhaustive examination of the authorities, aided by briefs of counsel, that we are obliged to say that the information does not technically charge the petitioner with the offense for which he was sentenced.

Two matters appear from an examination of the record upon which we feel it our duty to comment, although they are not strictly within the issues presented by this proceeding. It does not appear from the record that the petitioner was asked before sentence whether he had anything to say why sentence should not be pronounced against him. This right of the accused to be heard before sentence is pronounced is not a mere formality. In this connection we call attention to the language of Mr. Chief Justice GIBSON in *Hamilton v. Comm.* 16 Pa. St. 129:

"The forms of records are deeply seated in the foundations of the law; and as they conduce to safety and cer-

tainty, they surely ought not to be disregarded when the life of a human being is in question. Our practice of rotation has excluded experience from the county offices, and it would, perhaps, be profitable were the presiding judge to superintend the entries. It would at least prevent our judicial records from becoming entirely barbarous." See, also, *Ball v. U. S.* 140 U. S. 118, 130, 11 Sup. Ct. 761; *French v. State,* 85 Wis. 400, 55 N. W. 566.

The record does not show that the court, upon the plea of guilty being entered, found the defendant guilty of any specific offense. The proceedings in this case were evidently had under the provisions of sec. 4712, Stats., which provides that, upon the filing of an application therefor, the court may receive and record a plea of guilty and award sentence thereon. It does not require a formal finding. However, in a case like this, where the information filed charges an offense which includes others, good practice would indicate that there should be a finding, although it may not be technically necessary. Where an information charges an accused with murder in the first degree, and upon which he may be convicted of any degree of murder or manslaughter, and there is a general finding of the jury, as in the case of *Hogan v. State,* 30 Wis. 428, it is insufficient. It is necessary for the jury to find by their verdict the specific offense of which the defendant is guilty; otherwise the verdict is erroneous. We see no reason why the same principle should not apply to a plea of guilty to an information charging the same offense. So far as we are advised, it is the usual and customary practice of trial judges, upon the rendition of the verdict or the entering of a plea of guilty, to adjudge thereon that the defendant is guilty, stating the offense, and proceed thereupon to declare the sentence. While it may not be error to depart from this practice, it certainly makes the record more definite and certain and leaves nothing to be implied.

The plea of guilty of the defendant and the sentence

imposed by the court, whether it be regarded as erroneous because excessive, or as the result of an erroneous conclusion that the information charged the crime of murder in the first degree, constitutes a final judgment within the contemplation of the last paragraph of sec. 3428, and this court is required, therefore, under the provisions of sec. 3427, to remand the prisoner.

*By the Court.*—The demurrer to the return is overruled, and the prisoner is remanded to the custody of the warden of the state prison at Waupun.

Eschweiler, J., dissents.

A motion for a rehearing was denied, without costs, on April 11, 1922.