No. 30,230.

L. J. PETTIJOHN and OTERO G. BEESON, *Appellees*, v. W. H. STANLEY, *Appellant*.

(10 P. 2d 828.)

Opinion filed May 7, 1932.

*D. W. Eaton,* of Wichita, for the appellant.

*J. N. Tincher,* of Hutchinson, and *Riley W. MacGregor,* of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action to quiet title. The trial court sustained a demurrer to defendant's cross petition and rendered judgment for plaintiffs. Defendant has appealed.

Plaintiffs, in their petition, allege that they own and are in the possession of 2,000 acres of described land in Stevens county and that the plaintiff Pettijohn owns and is in possession of an additional 1,200 acres, which is described; that in April, 1930, they leased the same to the Skelly Oil Company for a production of gas and oil; that defendant, for the purpose of clouding plaintiffs' title to the real estate, filed and recorded a certain affidavit with the register of deeds of Stevens county; that the affidavit was false and has had the effect of disturbing plaintiffs in the quiet, peaceable possession of their premises and in closing their transaction with reference to the production of oil on the premises, and has cast a cloud upon plaintiffs' title, which they are entitled to have removed by the judgment of the court.

Defendant answered with a general denial, and by cross petition alleged that prior to March 26, 1930, he had negotiated for the purchase from plaintiffs of an oil and gas lease on the property in ques-

tion, as shown by letters and telegrams, copies of which were attached to his cross petition. The first of these was a letter from defendant to the plaintiff Pettijohn under date of February 15, 1930, in which defendant advised that he had taken a block of leases in Stevens county and was working to secure development; that in checking the map of the county he found the lands in question to be in the name of plaintiffs, and that he would be interested in leasing this land on a "Producer's 88 A" lease for a period of ten years at $1 per acre bonus and $1 per acre annual rental, and inquired if the plaintiffs would be interested. On February 20 defendant again wrote Pettijohn, inclosing a form of the lease, which called for $1 per acre rental beginning a year after the date of the lease, and stated if plaintiffs would care to name a bonus they would take for a lease for ten years he would try to negotiate a trade. Replying to that letter, March 3, Mr. Pettijohn wrote that he had received letters from other parties in Kansas concerning leases and invited defendant to send the best bonus he would offer in addition to the rental for the lease. On March 7 Mr. Pettijohn wired defendant that it was his intention to be in Dodge City the next week, when he would continue negotiations relative to leasing his Stevens county land for oil. From the allegations it would appear that defendant met plaintiffs at Dodge City and discussed the matter with them. At that time it seems defendant was endeavoring to negotiate the leases from plaintiffs to the Prairie Oil and Gas Company. The next of the correspondence shown is a telegram from Mr. Pettijohn to defendant on March 18, which stated that he would wire the next day if he could hear from Beeson, and that he would want leases made "to good company and yourself." On the same date defendant wired Mr. Pettijohn that the Prairie had refused to close deal, that he was much disappointed, that he could dispose of leases to responsible major companies and retain some acreage for himself. "Wire immediately if satisfactory to sell to other companies." On March 19 Mr. Pettijohn wired defendant: "Beeson will not lease as per your telegram yesterday. Will wait awhile." On the same day defendant wrote Mr. Pettijohn, explaining in some detail the refusal of the Prairie Oil and Gas Company to take the leases and the reasons therefor, of other companies he had taken the matter up with, and the possibility some one of them might take the acreage, or part of it, and asked that the matter be given further consideration, and that he be advised if plaintiffs cared to deal as outlined. The answer further alleged that on March 26 defendant sent a tele-

gram to plaintiff Pettijohn: "Have responsible operator that will take all of thirty-two hundred acres at price we previously agreed upon. Answer." Mr. Pettijohn replied, March 27: "You may write up leases as per verbal agreement. Because of partnership in some of these titles want to know operator or company is responsible."

The cross petition alleged that by the verbal agreement referred to in the telegram last mentioned it had been understood and agreed between the parties that Pettijohn would furnish the defendant, for examination, certificates of title prepared by a bonded abstracter of Stevens county; that defendant should prepare the leases and send them to plaintiffs, who would execute them and send them, with a draft on defendant for $4,000, to a named bank at Wichita, and that defendant, upon examination of the certificates of title, would pay the draft, and that, as some of the lands were mortgaged, defendant would obtain, at plaintiffs' expense, certificates from the holders of the mortgages as to whether they were in good standing. It is further alleged that on March 28 defendant sent Mr. Pettijohn a telegram that he would write up and forward leases "and satisfy you that purchaser is responsible," and on the next day wrote plaintiffs a letter, inclosing the leases in triplicate, asked that they be executed, that a depository for rentals be designated, that they be forwarded to a named bank at Wichita with draft on him for $4,000, and to have the time for the payment of the draft sufficient "for me to have the certificates of title made, which will take a few days, and it will be necessary for me to get the certificates examined" and to learn the status of the mortgages. "I have taken these leases in my name, and will make assignment to the company that takes over the block," and advised that the company that had taken over the block was the Jo-Mac Oil and Gas Company. Some statement of that company and its activities was made. It was made clear that there was no assurance that a well would be drilled on the lands. On April 5 Mr. Pettijohn wrote defendant, advising that he and Mr. Beeson had not been in favor of leasing to an individual, but wanted the tract taken in a body to a responsible company which would at some time drill on the land, that he was not familiar with the company mentioned. With reference to time to examine certificates of title and status of mortgages the letter inquired: "Why not obtain these now" so that you will be "ready to make payment on receipt of leases?" On April 7 Mr. Pettijohn wired defendant: "Have concluded not to lease now, as Beeson will not sign leases as written.

We will not divide acreage." Plaintiffs' letter of April 5 and this telegram reached defendant on the same day. After receiving them defendant wired plaintiffs:

"Sign original lease only . . . Have certificates of title waiting for leases to close deal. Received your telegram. Must close deal. Have made sale to Jo-Mac. They demand delivery. . . . Cannot cancel deal. Answer."

The cross petition alleged that by the terms of these telegrams and letters plaintiffs contracted to execute the leases to him for $1.25 per acre bonus; that the Jo-Mac Oil and Gas Company was a responsible concern; that the leases were in fact of the value of $6.25 per acre; that plaintiffs had refused to carry out their contract to make the lease to defendant, to his damage in the sum of $16,000. The prayer was for the specific performance of the contract, and in the alternative for damages in the sum of $16,000.

The trial court sustained a demurrer to the cross petition. The question presented here is whether or not the allegations of this cross petition show that there was binding contract between plaintiffs and defendant which can be enforced by specific performance, or be the basis for a claim for damages. It is clear there was not such a binding contract. The minds of the parties never met on essential features of the contract. Obviously defendant was undertaking to act as a broker to negotiate the leases to some responsible oil company. He first undertook to make a deal to the Prairie Oil and Gas Company, and apparently represented to plaintiffs that such a deal would be made. That fell through, for reasons not the fault of plaintiffs. He then thought that he might negotiate them to other companies, perhaps part of the land to one and part to another. He was advised plaintiffs would want them made to a responsible company and to defendant. He sent leases running to himself only, but advised that he planned to assign them to the Jo-Mac Company, which he represented to be a responsible concern. Plaintiffs knew nothing about that company. They never consented at any time to make leases to defendant alone. The proposition that the leases and draft would be forwarded to a named bank at Wichita, with an indefinite time for defendant's research and investigation before payment of the draft, was not agreed to by plaintiffs. If the leases were actually worth $6.25 per acre bonus obviously he had not advised plaintiffs of that fact, which, if he was acting as their broker, he should have done. His efforts to get the leases in his own name and then assign them, obviously with a large profit to himself, did not accord with

any agreement he had made with plaintiffs. Defendant's attitude, as disclosed by his answer and cross petition, is that of a none too conscientious broker seeking to obtain unjustified rights in the real property of nonresidents. The facts alleged do not state a cause of action in his behalf, nor justify him in filing of record an affidavit which clouds plaintiffs' title.

The judgment of the court below is correct, and it is affirmed.