NO. 04-14-00252-CR

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 4TH COURT |
| VS. | § | OF APPEALS |
| PHILIP GARAY | § | BEXAR COUNTY, TEXAS |

## MEMORANDUM AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION



COMES NOW, PETITIONER PHILIP GARAY, denying and challenging the jurisdiction of the above-named court over the subject matter in the above-entitled cause, for the reasons explained in the following memorandum:

### I.
### The Nature of Subject Matter Jurisdiction

The jurisdiction of a court over the subject matter has been said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. 21 C.J.S., "Courts," § 18, p. 25. A court cannot proceed with a trial or make a judgement without such jurisdiction existing.

It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act. Without it the court lacks any power to proceed; therefore, a defense based upon this lack cannot be waived and may be asserted at any time. Matter of Green, 313 S.E.2d 193 (N.C.App. 1984).

Subject matter jurisdiction cannot be conferred by waiver or consent, and may be raised at any time. Rodrigues v. State, 441 So.2d 1129 (Fla.App. 1983). The subject matter jurisdiction of a criminal case is related to the cause of action in general, more specifically to the alleged crime or offense which creates the action.

The subject matter of a criminal offense is the crime itself. Subject-matter in its broadest sense means the cause; the object; the thing in dispute. Stillwell v. Markham, 10 P.2d 15, 16 135 Kan. 296 (1932).

1.

An indictment or complaint in a criminal case is the main means by which a court obtains subject matter jurisdiction, and is "the jurisdictional instrument upon which the accused stands trial." State v. Chatmon, 671 P.2d 531, 538 (Kan. 1983). The indictment is the foundation of the jurisdiction of the magistrate or court. Thus if these charging instruments are invalid, there is a lack of subject matter jurisdiction.

Without a formal and sufficient indictment or information, a court does not acquire subject matter jurisdiction and thus an accused may not be punished for a crime. Honomichl v. State, 333 N.W.2d 797, 798 (S.D. 1983).

A formal accusation is essential for every trial of a crime. Without it the court acquires no jurisdiction to proceed, even with the consent of the parties, and where the indictment or information is invalid the court is without jurisdiction. Ex parte Carlson, 186 N.W. 722, 725, 176 Wis. 538 (1922).

Without a valid indictment any judgment or sentence rendered is "void ab initio" Ralph v. Police Court of El Cerrito, 190 P.2d 632, 634, 84 Cal.App.2d 257 (1948).

Jurisdiction to try and punish for a crime cannot be acquired by the mere assertion of it, or invoked otherwise than in the mode prescribed by law, and if it is not so acquired or invoked any judgment is a nullity. 22 C.J.S., "Criminal Law," § 167, P. 202.

The charging instrument must not only be in the particular mode or form prescribed by the constitution and statute to be valid, but it also must contain reference to valid laws. Without a valid law, the charging instrument is insufficient and no subject matter jurisdiction exists for the matter to be tried.

Where an indictment charges no crime, the court lacks jurisdiction to try the accused. People v. Hardiman, 347 N.W.2d 460, 462, 132 Mich.App. 382 (1984).

[W]hether or not the complaint charges an offense is a jurisdictional matter. Ex parte Carlson, 186 N.W. 722, 725, 176 Wis. 538 (1922).

An invalid law charged against one in a criminal matter also negates subject matter jurisdiction by the sheer fact that it fails to create a cause of action. "Subject matter is the thing in controversy." Holmes v. Mason, 115 N.W. 770, 80 Neb. 454, citing Black's Law Dictionary. Without a valid law, there is no issue or controversy for a court to decide upon. Thus, where a law does not exist or does not constitutionally exist, or where the law is invalid, void, or unconstitutional, there is no subject matter jurisdiction to try one for an offense alleged under such a law.

2.

If a criminal statute is unconstitutional, the court lacks subject-matter jurisdiction and cannot proceed to try the case. 22 C.J.S., "Criminal Law," § 157, p. 189; citing People v. Katrinak, 185 Cal.Rptr. 869, 136 Cal.App.3d 145 (1982).

Where the offense charged does not exist, the trial court lacks jurisdiction. State v. Christensen, 329 N.W.2d 382, 383, 110 Wis.2d 538 (1983).

Not all statutes create a criminal offense. Thus where a man was charged with "a statute which does not create a criminal offense," such person was never legally charged with any crime or lawfully convicted because the trial court did not have "jurisdiction of the subject matter," State ex rel. Hansen v. Rigg, 258 Minn. 388, 104 N.W.2d 553 (1960). There must be a valid law in order for subject matter to exist.

In a case where a man was convicted of violating certain sections of some laws, he later claimed that the laws were unconstitutional which deprived the county court of jurisdiction to try him for those offenses. The Supreme Court of Oregon held:

> If these sections are unconstitutional, the law is void and an offense created by them is not a crime and a conviction under them cannot be a legal cause of imprisonment, for no court can acquire jurisdiction to try a person for acts which are made criminal only by an unconstitutional law. Kelly v. Meyers, 263 Pac. 903, 905 (Ore. 1928).

Without a valid law there can be no crime charged under that law, and where there is no crime or offense there is no controversy or cause of action, and without a cause of action there can be no subject matter jurisdiction to try a person accused of violating said law. The court then has no power or right to hear and decide a particular case involving such invalid or nonexistent laws.

These authorities and others make it clear that if there are no valid laws charged against a person, there is nothing that can be deemed a crime, and without a crime there is no subject matter jurisdiction. Further, invalid or unlawful laws make the complaint fatally defective and insufficient, and without a valid complaint there is a lack of subject matter jurisdiction.

The Petitioner asserts that the laws charged against him are not valid, or do not constitutionally exist as they do not conform to certain constitutional prerequisites, and thus are no laws at all, which prevents subject matter jurisdiction to the above-named court.

3.

The criminal indictments in question allege that the Petitioner has committed several crimes by the violation of certain laws which are listed in said complaints, to wit:

Driving While Intoxicated - V.T.C.A., Penal Code § 49.04

Enhanced Offences And Penalties - V.T.C.A., Penal Code § 49.09

Petitioner contends that these laws or statutes used in the complaints against petitioner are located in and derived from a collection of books entitled "Texas Penal Code." Upon looking up these laws in this publication, Petitioner discovered they do not adhere to several constitutional provisions of the Texas Constitution.

By Article 3 of the Constitution of Texas (1876), all lawmaking authority for the State is vested in the Legislature of Texas. This Article also prescribes certain forms, modes and procedures that must be followed in order for a valid law to exist under the constitution. It is fundamental that nothing can be a law that is not enacted by the Legislature prescribed in the Constitution, and which fails to conform to constitutional forms, prerequisites or prohibitions. These are the grounds for challenging the subject matter jurisdiction of this court, since the validity of a law on a complaint or indictment goes to the jurisdiction of a court. The following explains in authoritative detail why the laws cited in the indictment against the Petitioner are not constitutionally valid laws.

## II.

## By Constitutional Mandate, all Laws Must Have an Enacting Clause

One of the forms that all laws are required to follow by the Constitution of Texas (1876), is that they contain an enacting style or clause. This provision is stated as follows:

Article III, Sec. 29. The style of all laws of this State shall be: "Be it enacted by the Legislature of the State of Texas."

None of the laws cited in the complaints against the Accused, as found in the "Texas Penal Codes" or "Texas Statutes," contain any enacting clauses.

The constitutional provision which prescribes an enacting clause for all laws is not directory, but is mandatory. This provision is to be strictly adhered to as asserted by the Supreme Court of Texas, Court of Criminal Appeals.

Under a constitutional provision such as that set out in Article 3 Sec. 29, it is mandatory that every law contain these words showing on its face the Authority by which it is enacted and that Authority is the Legislature of the State of Texas. This mandate acts as a limitation on the power of the legislature and, if not complied with, that bodys acts do not have force and effect of law. National Biscuit Co. v. State Civ.App. 129 S.W.2d 494 (1939). American Indemnity Co. v. City of Austin 112 T. 239, 246 S.W. 1019 (1922).

4.

Upon both Principle and Authority, Article 3 Sec. 29 of the Texas Constitution which provides that "the style of all laws of this State shall be· "Be it enacted by the Legislature of the State of Texas," is mandatoty, and that a statute without any enacting clause is void. Bills must contain the enacting clause prescribed by Article 3 Sec. 29 and have adequate titles and contain but one subject. Thus, a statute without any enacting clause is void. See Sjoberg v. Security Savings and Loan Assn. 73 Minn. 203, 212 (1898).

## III.
## What is the Purpose of the Constitutional Provision for an Enacting Clause?

To determine the validity of using laws without an enacting clause against citizens, we need to determine the purpose and function of an enacting clause; and also to see what problems or evils were intended to be avoided by including such a provision in our State Constitution. One object of the constitutional mandate for an enacting clause is to show that the law is one enacted by the legislative body which has been given the lawmaking authority under the Constitution.

The purpose of thus prescribing an enacting clause— "the style of the acts" —is to establish it; to give it permanence, uniformity, and certainty; to identify the act of legislation as of the general assembly; to afford evidence of its legislative statutory nature; and to secure uniformity of identification, and thus prevent inadvertence, possibly mistake and fraud. State v. Patterson, 4 S.E. 350, 352, 93 N.C. 660 (1887); 82 C.J.S., "Statutes," § 65, p. 104; Joiner v. State, 155 S.E.2d 8, 10, 223 Ga. 367 (1967).

What is the object of the style of a bill or enacting clause anyway? To show the authority by which the bill is enacted into law; to show that the act comes from a place pointed out by the Constitution as the source of legislation. Ferrill v. Keel, 151 S.W. 269, 272, 105 Ark. 380 (1912).

To fulfill the purpose of identifying the lawmaking authority of law, it has been repeatedly declared by the courts of this land that an enacting clause is to appear on the face of every law which the people are expected to follow and obey.

The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority. The purpose of an enacting clause of a statute is to identify it as an act of legislation by expressing on its face the authority behind the act. 73 Am. Jur.2d, "Statutes," § 93. p. 319, 320; Preckel v. Byrne, 243 N.W. 823, 826, 62 N.D. 356 (1932).

For an enacting clause to appear on the face of a law, it must be recorded or published with the law so that the public can readily identify the authority for that particular law which they are expected to follow. The "statutes" used in the indictments against the Petitioner have

no enacting clauses. They thus cannot be identified as acts of legislation of the State of Texas pursuant to its lawmaking authority under Article III of the Constitution of Texas (1876), since a law is mainly identified as a true and constitutional law by way of its enacting clause. The Supreme Court of Georgia asserted that a statute must have an enacting clause, even though their State Constitution had no provision for the measure. The Court stated that an enacting clause establishes a law or statute as being true and authentic law of the State:

> The enacting clause is that portion of a statute which gives it jurisdictional identity and constitutional authenticity. Joiner v. State, 155 S.E.2d 8, 10 (Ga. 1967).

The failure of a law to display on its face an enacting clause deprives it of essential legality, and renders a statute which omits such clause as "a nullity and of no force of law." Joiner v. State, supra. The statutes cited in the complaints have no jurisdictional identity and are not authentic laws under the Constitution of Texas.

The Court of Appeals of Kentucky held that the constitutional provision requiring an enacting clause is a basic concept which has a direct affect upon the validity of a law. The Court, in dealing with a law that had contained no enacting clause, stated:

> The alleged act or law in question is <u>unnamed</u>; it shows <u>no sign of authority</u>; it carries with it <u>no evidence</u> that the General Assembly or any other lawmaking power is responsible or answererable for it. * * * By an enacting clause, the makers of the Constitution intended that the General Assembly should make its impress or seal, as it were, upon each enactment for the sake of identity, and to assume and show responsibility. * * * While the Constitution makes this a necessity, it did not originate it. The custom is in use practically everywhere, and is as old as parliamentary government, as old as king's decrees, and even they borrowed it. The decrees of Cyrus, King of Persia, which Holy Writ records, were not the first to be prefaced with a <u>statement of authority</u>. The law was delivered to Moses in the name of the Great I Am, and the prologue to the Great Commandments is no less majestic and impelling. But whether these edicts and commands be promulgated by the Supreme Ruler or by petty kings, or by the sovereign people themselves, they have always begun with some such form <u>as an evidence of power and authority</u>. Commonwealth v. Illinois Cent. R. Co., 170 S.W. 171, 172, 175, 160 Ky. 745 (1914).

The "laws" used against the Petitioner are unnamed. They show no sign of authority on their face as recorded in the "Texas Penal Code and Statutes." They carry with them no evidence that the Legislature of Texas, pursuant to Article III of the Constitution of Texas (1876), is responsible for these laws. Without an enacting clause the laws referenced to in the complaints have no official evidence that they are from an authority which Petitioner is subject or required to obey.

When the question of the "objects intended to be secured by the enacting clause provision" was before the Supreme Court of Minnesota, the Court held that such a clause was necessary to show the people who are to obey the law, the authority for their obedience. It was revealed that historically this was a main use for an enacting clause, and thus its use is a fundamental concept of law. The Court stated:

> All written laws, in all times and in all countries, whether in the form of decrees issued by absolute monarchs, or statutes enacted by king and council, or by a representative body, have, as a rule, expressed upon their face the authority by which they were promulgated or enacted. The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority. If such an enacting clause is a mere matter of form, a relic of antiquity, serving no useful purpose, why should the constitutions of so many of our states require that all laws must have an enacting clause, and prescribe its form? If an enacting clause is usefull and important, if it is desirable that laws shall bear upon their face the authority by which they are enacted, so that the people who are to obey them need not search legislative and other records to ascertain the authority, then it is not beneath the dignity of the framers of a constitution, or unworthy of such an instrument, to prescribe a uniform style for such enacting clause.
>
> The words of the constitution, that the style of all laws of this state shall be, "Be it enacted by the legislature of the state of Minnesota," imply that all laws must be so expressed or declared, to the end that they may express upon their face the authority by which they were enacted; and, if they do not so declare, they are not laws of this state. Sjoberg v. Security Savings & Loan Assn, 73 Minn. 203, 212-214 (1898).

This case was initiated when it was discovered that the law relating to "building, loan and savings associations," had no enacting clause as it was printing in the statute book, "Laws 1897, c. 250." The Court made it clear that a law existing in that manner is "void" Sjoberg, supra, p. 214.

The purported laws in the complaints, which the Petitioner is said to have violated, are referenced to various laws found printed in the "Texas Penal Code" book. Petitioner has looked up the laws charged against him in this book and found no enacting clause for any of these laws. A citizen is not expected or required to search through other records or books for the enacting authority. If such enacting authority is not "on the face" of the laws which are referenced in a complaint, then "they are not laws of this state;" and thus are not laws to which Petitioner is subject. Since they are not laws of this State, the above-named Court has no subject matter jurisdiction, as there can be no crime which can exist from failing to follow laws which do not constitutionally exist.

In speaking on the necessity and purpose that each law be prefaced with an enacting clause, the Supreme Court of Tennessee quoted the first portion of the Sjoberg case cited above, and then stated:

> The purpose of provisions of this character is that all statutes may bear upon their faces a declaration of sovereign authority by which they are enacted and declared to be the law, and to promote and preserve uniformity in legislation. Such clauses also import a command of obedience and clothe the statute with a certain dignity, believed in all times to command respect and aid in the enforcement of laws. State v. Burrow, 104 S.W. 526, 529, 119 Tenn. 376 (1907).

The use of an enacting clause does not merely serve as a "flag" under which bills run the course through the legislative machinery. Vaughn & Ragsdale Co. v. State Bd. of Eq., 96 P.2d 420, 424 (Mont. 1939). The enacting clause of a law goes to its substance, and is not merely procedural. Morgan v. Murray, 328 P.2d 644, 654 (Mont. 1958).

Any purported statute which has no enacting clause on its face, is not legally binding and obligatory upon the people, as it is not constitutionally a law at all. The Supreme Court of Michigan, in citing numerous authorities, said that an enacting clause was a requisite to a valid law since the enacting provision was mandatory:

> It is necessary that every law should show on its face the authority by which it is adopted and promulgated, and that it should clearly appear that it is intended by the legislative power that enacts it that it should take effect as a law. People v. Dettenthaler, 77 N.W. 450, 451, 118 Mich. 595 (1898); citing Swann v. Buck, 40 Miss. 270.

The laws in the "Texas Penal Code Statutes" do not show on their face the authority by which they are adopted and promulgated. There is nothing on their face which declares they should be law, or that they are of the proper legislative authority in this State.

These and other authorities then all hold that the enacting clause of a law is to be "on its face." It must appear directly above the content or body of the law. To be on the face of the law does not and cannot mean that the enacting clause can be buried away in some other volume or some other book or records.

> Face. The surface of anything, especially the front, upper, or outer part or surface. That which particularly offers itself to the view of a spectator. That which is shown by the language employed, without any explanation, modification, or addition from extrinsic facts or evidence. Black's Law Dictionary, 5th ed., p. 530.

8.

The enacting must be intrinsic to the law, and not "extrinsic" to it, that is, it cannot be hidden away in other records or books. Thus the enacting clause is regarded as part of the law, and has to appear directly with the law, on its face, so that one charged with said law knows the authority by which it exists.

## IV.
## Laws Must be Published and Recorded with Enacting Clauses

Since it has been repeatedly held that an enacting clause must appear "on the face" of a law, such a requirement affects the printing and publishing of laws. The fact that the constitution requires "all laws" to have an enacting clause makes it a requirment on not just bills within the legislature, but on published laws as well. If the constitution said "all bills" shall have an enacting clause, it probably could be said that their use in publications would not be required. But the historical usage and application of an enacting clause has been for them to be printed and published along with the body of the law, thus appearing "on the face" of the law.

It is obvious, then, that the enacting clause must be readily visible on the face of a statute in the common mode in which it is published so that citizens don't have to search through the legislative journals or other records and books to see the kind of clause used, or if any exists at all. Thus a law in a statute book with an enacting clause is not a valid publication of law. In regards to the validity of a law that was found in their statute books with a defective enacting clause, the Supreme Court of Nevada held:

> Our constitution expressly provided that the enacting clause of every law shall be, "The people of the state of Nevada, represented in senate and assembly, do enact as follows." This language is susceptible of but one interpretation. There is no doubtful meaning as to the intention. It is, in our judgement, an imperative mandate of the people, in their sovereign capacity, to the legislature, requiring that all laws, to be binding upon them, shall, upon their face, express the authority by which they were enacted; and, since this act comes to us without such authority appearing upon its face, it is not a law." State of Nevada v. Rogers, 10 Nev. 120, 261 (1875); approved in Caine v. Robbins, 131 P.2d 516, 518, 61 Nev. 416 (1942); Kefauver v. Spurling, 290 S.W. 14, 15 (Tenn. 1926).

The manner in which the law came to the court was by the way it was found in the statute book, cited by the Court as "Stat. 1875, 66," and that is how they judge the validity of the law. Since they saw that the act, as it was printed in the statute book, had an insufficient enacting clause on its face, it was deemed to be "not a law." It is only by inspecting the publicly printed statute book that the people can determine the source, authority and constitutional authenticity of the law they are expected to follow.

It should be noted that laws in the above cases were held to be void for having no enacting clauses despite the fact that they were published in an official statute book of the State, and were next to other laws which had the proper enacting clauses. Therefore, a look at the Texas Penal Code, which is published in an official book entitled "Texas Penal Code Annotated Vernon" has _no_ enacting clauses, thus should also be void for having no enacting clauses.

The preceding examples and declarations on the use and purpose of enacting clauses shows beyond doubt that nothing can be called or regarded as a law of this State which is published without an enacting clause on its face. Nothing can exist as a State law except in the manner prescribed by the State Constitution. One of those provisions is that "all laws" must bear on their face a specific enacting style—"Be it enacted by the Legislature of the State of Texas." (Tx. Const., Art. III, Sec. 29). All laws must be published with this clause in order to be valid laws, and since the "statutes" in "Texas" are not so published, they are not valid laws of this State.

V.

**The Laws Referenced to in the Complaints Contain no Titles**

The laws listed in the complaints in question, as cited from the "Texas Statutes," contain no titles. All laws are to have titles indicating the subject matter of the law, as required by the Constitution of Texas:

> Article III, Sec. 35. No bill shall contain more than one subject. The subject of each bill shall be expressed in its title in a manner that gives the legislature and the public reasonable notice of that subject.

By this provision a title is required to be on all laws. The title is another one of the forms of a law required by the Constitution. This type of constitutional provision "makes the title an essential part of every law," thus the title "is as much a part of the act as the body itself." Leininger v. Alger, 26 N.W.2d 348, 351, 316 Mich. 644 (1947).

> The title to a legislative act is a part thereof, and must clearly express the subject of legislation. State v. Burlington & M. R.R. Co., 60 Neb. 741, 84 N.W. 254 (1900).

Nearly all legal authorities have held that the title is part of the act, especially when a constitutional provision for a title exists. 37 A.L.R. Annotated, pp. 948, 949. What then can be said of a law in which an essential part of it is missing, except that it is not a law under the State Constitution.

This provision of the State Constitution, providing that every law is to have a title expressing one subject, is mandatory and is to be followed in all laws, as stated by the Supreme Court of Minnesota:

We pointed our that out constitutional debates indicated that the constitutional requirements relating to the enactment of statutes were intended to be remedial and mandatory,—remedial, as guarding against recognized evils arising from loose and dangerous methods of conducting legislation, and mandatory, as requiring compliance by the legislature without discretion on its part to protect the public interest against such recognized evils, and that the validity of statutes should depend on compliance with such requirements * * *. Bull v. King, 286 N.W. 311, 313 (Minn. 1939).

The constitutional provisions for a title have been held in many other states to be mandatory in the highest sense. State v. Beckman, 185 S.W.2d 810, 816 (Mo. 1945); Leininger v. Alger, 26 N.W.2d 384, 316 Mich. 644; 82 C.J.S. "Statutes," § 64, p. 102. The provision for a title in the constitution "renders a title indispensable." 73 Am. Jur. 2d, "Statutes," § 99, p. 325, citing People v. Monroe, 349 Ill. 270, 182 N.E. 439. Since such provisions regarding a title are mandatory and indispensable, the existence of a title is necessary to the validity of the act. If a title does not exist, then it is not a law pursuant to Art. III Sec. 35 of the Constitution of Texas (1876). In speaking of the constitutional provision requiring one subject to be embraced in the title of each law, the Supreme Court of Tennessee stated:

That requirement of the organic law is mandatory, and, unless obeyed in every instance, the legislation attempted is invalid and of no effect whatever. State v. Yardley, 32 S.W. 481, 482, 95 Tenn. 546 (1895).

To further determine the validity of citing laws in a complaint which have no titles, we must also look at the purpose for this constitutional provision, and the evils and problems which it was intended to prevent or defeat.

One of the aims and purposes for a title or caption to an act is to convey to the people who are to obey it the legislative intent behind the law.

The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. Megins v. City of Duluth, 106 N.W. 89, 90, 97 Minn. 23 (1906); Hyman v. State, 9 S.W. 372, 373, 87 Tenn. 109 (1888).

In ruling as to the precise meaning of the language employed in a statute, nothing, as we have said before, is more pertinent towards ascertaining the true intention of the legislative mind in the passage of the enactment than the legislature's own interpretation of the scope and purpose of the act, as contained in the caption. Wimberly v. Georgia S. & F.R. Co., 63 S.E. 29, 5 Ga.App. 263 (1908).

Under a constitutional provision * * * requiring the subject of the legislation to be expressed in the title, that portion of an act is often the very window through which the legislative intent may be seen. State v. Clinton County, 76 N.E. 986, 166 Ind. 162 (1906).

The title of an act is necessarily a part of it, and in construing the act the title should be taken into consideration. Glasser v. Rothschild, 120 S.W. 1, 221 Mo. 180 (1909).

Without the title the intent of the legislature is concealed or cloaked from public view. Yet a specific purpose or function of a title to a law is to "protect the people against covert legislation" Brown v. Clower, 166 S.E.2d 363, 365, 225 Ga. 165 (1969). A title will reveal or give notice to the public of the general character of the legislation. However, the nature and intent of the "laws" in the "Texas Statutes" have been concealed and made uncertain by its nonuse of titles. The true nature of the subject matter of the laws therein is not made clear without titles. Thus another purpose of the title is to apprise the people of the nature of legislation, thereby preventing fraud or deception in regard to the laws they are to follow. The U.S. Supreme Court, in determining the purpose of such a provision in state constitutions, said:

> The purpose of the constitutional provision is to prevent the inclusion of the incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth and fraud in legislation. * * *Courts strictly enforce such provisions in cases that fall within the reasons on which they rest, * * * and hold that, in order to warrant the setting aside of enactments for failure to comply with the rule, the violation must be substantial and plain. Posados v. Warner, B. & Co., 279 U.S. 340, 344 (1928); also Internat. Shoe Co. v. Shartel, 279 U.S. 429, 434 (1928).

The complete omission of a title is about as substantial and plain a violation of this constitutional provision as can exist. The laws cited in the complaints against the Accused are of that nature. They have no titles at all, and thus are not laws under our State Constitution.

The Supreme Court of Idaho, in construing the purpose for its constitutional provision requiring a one-subject title on all laws, stated:

> The object of the title is to give a general statement of the subject-matter, and such a general statement will be sufficient to include all provisions of the act having a reasonable connection with the subject-matter mentioned. * * * The object or purpose of the clause in the Constitution * * * is to prevent the perpetration of fraud upon the members of the Legislature or the citizens of the state in the enactment of laws. Ex parte Crane, 151 Pac. 1006, 1010, 1011, 27 Idaho 671 (1915).

12.

The Supreme Court of North Dakota, in speaking on its constitutional provision requiring titles on laws, stated that, "This provision is intended * * * to prevent all surprises or misapprehensions on the part of the public." State v. McEnroe, 283 N.W. 57, 61 (N.D. 1928). The Supreme Court of Minnesota, in speaking on Article 4, § 27 of the State Constitution, said:

This section of the constitution is designed to prevent deception as to the nature or subject of legislative enactments. State v. Rigg, 109 N.W.2d 310, 314, 260 Minn. 141 (1961); LeRoy v. Special Ind. Sch. Dist., 172 N.W.2d 764, 768 (Minn. 1969).

[T]he purpose of the constitutional provision quoted is * * * to prevent misleading or deceiving the public as to the nature of an act by the title given it. State v. Helmer, 211 N.W. 3, 169 Minn. 221 (1926).

The purposes of the constitutional provision requiring a one-subject title, and the mischiefs which it was designed to prevent, are defeated by the lack of such a title on the face of a law which a citizen is charged with violating. Upon looking at the laws charged in the complaint from the "Texas Statutes," Petitioner is left asking, what is the subject and nature of the laws used in the complaints against him? What interests or rights are these laws intended to affect? Since the particular objects of the provision requiring a one-subject title are defeated by the publication of laws which are completely absent of a title, the use of such a publication to indict or charge citizens with violating such laws is fraudulent and obnoxious to the constitution.

It is to prevent surreptitious, inconsiderate, and misapprehended legislation, carelessly, inadvertently, or unintentionally enacted through stealth and fraud, and similar abuses, that the subject or object of a law is required to be stated in the title. 73 Am. Jur. 2d, "Statutes," § 100, p. 325, cases cited.

Judge Cooley says that the object of requiring a title is to "fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered." Cooley, Const. Lim., p. 144. The State Constitution requires one-subject titles. The particular ends to be accomplished by requiring the title of a law are not fulfilled in the statutes referred to in the "Texas Statutes." Thus the laws charged in the complaints against Petitioner are not valid laws.

## VI.
### The Texas Statutes are of an Unknown and Uncertain Authority

The so called "statutes" in the "Texas Statutes" are not only absent enacting clauses, but are surrounded by other issues and facts which make their authority unknown or uncertain or questionable.

13.

The title page of the "Texas Statutes" states that the statutes therein were "not necessarily prepared by persons licensed to practice law in a particular jurisdiction." It does not say that they are the official laws of the Legislature of Texas. The Official Laws of their state has always been listed in the "Session Laws" of Texas. The title page to the Session Laws makes it clear as to the nature of the laws therein.

The "Session Laws" were also published by the Secretary of the State, who historically and constitutionally is in possession of the enrolled bills of the Legislature which become State Law.

The "Texas Statutes" are published by "Vernon's Texas Codes Annotated, Thomson Reuters ® 2011," and are also copyrighted. The "Session Laws" were never copyrighted, as they are true public documents. In fact, no true public document of this state or any state or of the United States has been or can be under a copyright. Public documents are in the public domain. A copyright infers a private right over the contents of a book, suggesting that the laws in the "Texas Statutes" are derived from a private source, and thus are not true public laws. The "Texas Statutes" appear to be nothing more than a reference book that is copyrighted. The contents of such reference books cannot be used as law in charging citizens with crimes on criminal complaints.

Vernon's does not say that the statutes in its books are the official laws of the State of Texas. It indicates that these statutes were "created to provide you with accurate and authoritive information concerning the subject matter covered." There thus are many confusing and ambiguous statements made as to the nature and authority of the statutes in the "Texas Statutes." It is not at all made certain that they are laws pursuant to Article III of the Constitution of Texas. That which is uncertain cannot be accepted as true or valid in law.

Uncertain things are held for nothing. Maxim of Law.
The law requires, not conjecture, but certainty. COffin v. Ogden, 85 U.S. 120, 124.
Where the law is uncertain, there is not law. Bouvier's Law Dictionary, vol. 2, "Maxims," 1880 edition.

The purported statutes in the "Texas Statutes" do not make it clear by what authority they exist. The statutes therein have no enacting authority on their face. In fact, there is not a hint that the Legislature of Texas had anything to do with these so-called Statute Books. Thus the statutes used against the Petitioner are just idle words which carry no authority of any kind on their face.

14.

# VII.
## Established Rules Of Constitutional Construction

The issue of subject matter jurisdiction for this case thus squarely rests upon certain provisions of the Constitution of Texas (1876), to wit:

Article III, Sec. 29. The style of all laws of this state shall be: "Be it enacted by the Legislature of the State of Texas."

Article III, Sec. 35. No bill shall contain more than one subject.

These provisions are not in the least ambiguous or susceptible to any other interpretation than their plain and apparent meaning. The Supreme Court of Montana, in construing such provisions, said that they were "so plainly and clearly expressed and are so entirely free from ambiguity," that "there is nothing for the court to construe" Vaughn & Ragsdale Co. v. State Bd. of Eq., 96 P.2d 420, 424. The Supreme Court of Minnesota stated how these provisions are to be construed, when it was considering the meaning of another provision under the legislative department (Art. 4, § 9):

In treating of the constitutional provisions, we believe it is the general rule among courts to regard them as mandatory, and not leave it to the will or pleasure of a legislature to obey or disregard them. Where the language of the constitution is plain, we are not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom. * * * The rule with reference to constitutional construction is also well stated by Johnson, J., in the case of Newell v. People, 7 N.Y. 9, 97, as follows: "If the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and neither courts nor legislatures have the right to add to or take away from that meaning. * * * It must be very plain,—nay, absolutely certain— that the people did not intend what the language they have employed in its natural signification imports, before a court will feel itself at liberty to depart from the plain reading of a constitutional provision." State ex rel v. Sutton, 63 Minn. 147, 149, 150, 65 N.W. 262 (1895); affirmed, State v. Holm, 62 N.W.2d 52, 55, 56 (Minn. 1954); Butler Taconite v. Roemer, 282 N.W.2d 867, 870, 871 (Minn. 1979).

It is certain that the plain and apparent language of these Constitutional provisions are not followed in the publication known as the "Texas Statutes" which contain no titles and no enacting clauses, and thus it is not and cannot be used as the law of this State under our constitution. No language could be plainer or clearer than that used in Art. III, § 29 and § 35 of our constitution. There is no room for construction! The contents of these provisions were written in ordinary language, making their meaning self-evident.

No matter how much the courts of this State have relied upon and used the publication entitled "Texas Statutes" as being law, that use can never be regarded as an exception to the Constitution. To support this publication as law, it must be said that it is "absolutely certain" that the framers of the Constitution did not intend for titles and enacting clauses to be printed and published with all laws, but that they did intend for them to be all stripped away and concealed from public view when a compilation of statutes is made. Such an absurdity will gain the support or respect of no one. Nor can it be speculated that an annotated statute publication which dispenses with all titles and enacting clauses must be allowed under the Constitution as it is more practical and convenient than the "Session Law" publication. The use of such speculation or desired exceptions can never be used in construing such plain and unambiguous provisions.

> [T]he general rule of law is, when a statute or Constitution is plain and unambiguous, the court is not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom. A Constitution is intended to be framed in brief and precise language. * * * It is not within the province of the court to read an exception in the Constitution which the framers thereof did not see fit to enact therein. Baskin v. State, 232 Pac. 388, 389, 107 Okla. 272 (1925).

There is of course no need for construction or interpretation of these provisions as they have been adjudicated upon, especially those dealing with the use of an enacting clause. The Texas Court of Criminal Appeals has made it clear that Article III Sec. 29 of the Texas Constitution "is mandatory state law requiring an enacting clause and Secretary of State must authenticate publication laws, and that a statute without an enacting clause is void." Ervin v. State (App. 5 Dist. 2003) W L 2152 - 5309. Being that the statutes used against Petitioner are without enacting clauses and titles they are void, which means there is no offense, no valid complaints, and thus no subject matter jurisdiction.

The provisions requiring an enacting clause and one-subject titles were adhered to with the publications known as the "Session Law" and "General Laws" for the State of Texas. But because certain people in government thought that they could devise a more convenient way of doing things without regard for provisions of the State Constitution, they devised a contrivance

known as the "Texas Statutes," and then held it out to the public as being "law." This of course was fraud, subversion, and a great deception upon the people of this State which is now revealed and exposed.

There is no justification for deviating from or violating a written constitution. The "Texas Statutes" cannot be used as law, like the "Session Laws" were once used, solely because the circumstances have changed and we now have more laws to deal with. It cannot be said that the use and need of revised statutes without titles and enacting clauses must be justified due expediency. New circumstances or needs do not change the meaning of constitutions, as Judge Cooley expressed:

> A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable. A principal share of the benefit expected from written constitutions would be lost if the rules they established were so flexible as to bend to circumstances or be modified by public opinion.* * * [A] court or legislature which should allow a change in public sentiment to influence it in giving to a written constitution a construction not warranted by the intention of its founders, would be justly chargable with reckless disregard of official oath and public duty; and if its course could become a precedent, these instruments would be of little avail. * * * What a court is to do, therefore, is to declare the law as written. T.M. Cooley, A Treatise on the Constitutional Limitations, 5th edition, pp. 54, 55.

There is great danger in looking beyond the constitution itself to ascertain its meaning and the rule for government. Looking at the Constitution alone, it is not at all possible to find support for the idea that the publication called the "Texas Statutes" is valid law of this State. The original intent of Article 3, §29 and §35 of the Constitution cannot be stretched to cover their use of such. These provisions cannot now be regarded as antiquated, unnecessary or of little importance, since "no section of a constitution should be considered superfluous." Butler Taconite v. Roemer, 282 N.W.2d 867, 870, (Minn. 1979). The Constitution was written for all times and circumstances, because it embodies fundamental principles which do not change with time.

Judges are not to consider the political or economic impact that might ensue from upholding the Constitution as written. They are to uphold it no matter what may result, as that ancient maxim of law states: "Though the heavens may fall, let justice be done."

17.

## MOTION

Based upon the above memorandum, the Petitioner moves that this action and cause be dismissed for lack of subject matter jurisdiction.

A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisiction is lacking. United States v. Siviglia, 686 Fed.2d 832, 835 (1981), cases cited.

Nothing can be regarded as a law in this State which fails to conform to the constitutional prerequisites which call for an enacting clause and title. There is nothing in the complaints which can constitutionally be regarded as laws, and thus there is nothing in them which Petitioner is answerable for or which can be charged against him. Since there are no valid or constitutional laws charged against Petitioner, there are no crimes that exist, consequently there is no subject matter jurisdiction by which he can be tried in the above-named court.

## CAVEAT

I regard it as just and necessary to give fair warning to this court of the consequences of its failure to follow the Constitution of Texas and uphold its oath and duty in this matter, being that it can result in this court committing acts of treason, usurpation, and tyranny. Such trespasses would be clearly evident to the public, especially in light of the clear and unambiguous provisions of the Constitution that are involved here which leave no room for construction, and in light of the numerous adjudications upon them as herein stated. The possible breaches of law that may result by denying this motion are enumerated as follows:

1. The failure to uphold these clear and plain provisions of our Constitution cannot be regarded as mere error in judgement, but deliberate USURPATION. "Usurpation is defined as unauthorized arbitrary assumption and exercise of power." State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 543, 48 N.W.2d 855, 863 (1951). While error is only voidable, such usurpation is void.

The boundry between an error in judgement and the usurpation of judicial power is this: The former is reversible by an appellate court and is, therefore, only voidable, which the latter is a nullity. State v. Mandehr, 209 N.W. 750, 752 (Minn. 1926).

To take jurisdiction where it clearly does not exist is usurpation, and no one is bound to follow acts of usurpation, and in fact it is a duty of citizen to disregard and disobey them since they are void and unenforcable.

18.

[N]o authority need be cited for the proposition that, when a court lacks jurisdiction, any judgement rendered by it is void and unenforceable. Hooker v. Boles, 346 Fed.2d 285, 286 (1965).

The fact that the "Texas Statutes" has been in use for over forty years cannot be held as a justification to continue to usurp power and set aside the constitutional provisions which are contrary to such usurpation, as Judge Cooley stated:

Acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution. Cooley, Constitutional Limitations, p. 71.

2. To assume jurisdiction in this case would result in TREASON. Chief Justice John Marshall once stated:

We [judges] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Cohens v. Virginia, 6 Wheat. (19 U.S.) 264, 404 (1821).

The judge of this court took an oath to uphold and support the Constitution of Texas, and his blatant disregard of that obligation and allegiance can only result in an act of treason.

3. If this court departs from the clear meaning of the Constitution, it will be regarded as a blatant act of TYRANNY. Any exercise of power which is done without the support of law or beyond what the law allows is tyranny.

It has been said, with much truth, "Where the law ends, tyranny begins." Merritt v. Welsh, 104 U.S. 694, 702 (1881).

The law, the Constitution, does not allow laws to exist without titles or enacting clauses. To go beyond that and allow the "Texas Statutes" to exist as "law" is nothing but tyranny. Tyranny and despotism exist where the will and pleasure of those in government is followed rather than established law. It has been repeatedly said and affirmed as a most basic principle of our government that, "this is a government of laws and not of men; and that there is no arbitrary power located in any individual or body of individuals." Cotting v. Kansas City Stock Yards Co., 183 U.S. 79, 84 (1901). The Constitution requires that all laws have enacting clauses and titles. If these clear and unambiguous provisions of the State Constitution can be disregarded, then we no longer have a constitution in this State, and we no longer live under a government of laws but a government of men, i.e., a system that is governed by the arbitrary will of those in office. The creation of the "Texas Statutes" is a typical example of the arbitrary acts of government which have become all too prevalent in this

19.

century. Its use as law is a nullity under our Constitution.

WHEREFORE, PREMISES CONSIDERED, the Petitioner respectfully prays that the court grant this Motion, and moves that this Action and Cause be dismissed for lack of Subject Matter Jurisdiction.

Respectfully Submitted,

Philip Garay #1923161
1391 FM 3328
Tennessee Colony, Texas 75880

20.

## VIII
## Certificate of Service

I STEPHEN GARAY CERTIFY THAT ON January 23, 2015 2015, A TRUE AND EXACT COPY OF THE AFORESAID MOTION WAS SENT, FIRST CLASS POSTAGE PAID, BY U.S. MAIL to:

A) FOURTH COURT OF APPEALS OF TEXAS
   DAN E. CRUTCHfield
   3200 CADENA-REEVES Justice Center
   300 Dolorosa st.
   SAN ANTONIO, TX. 78205-3037

B) Susan Dolan Reed
   BEXAR County DISTRICT ATTORNEY
   Appellate Division
   101 W. NUEVA ST. Ste. 370
   SAN ANTONIO, TX. 78205

C) RicHARD B. Dulany, Jr.
   Interim CHief Public Defender
   Bexar County Public Defenders Office
   101 W. NUEVA ST. ste. 310
   SAN Antonio, TX. 78205

D) Philip Joseph Garay
   TDCJ # 1923161
   George Beto Unit
   1391 FM 3328
   TEnnessee Colony, TX. 75880

21.

## Inmates Unsworn Declaration

I, PHILIP Joseph GARAY BEING PRESENTLY INCARCERATED IN THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, GEORGE BETO UNIT, DECLARE UNDER PENALTY OF PURGURY THAT, ACCORDING TO MY BELIEF, THE FACTS STATED IN THE MOTION ARE TRUE AND CORRECT.

SIGNED ON ___January 23, 2015___

___Philip J. Garay___
SIGNATURE OF APPLICANT
__SELF / CO-COUNSEL; RICHARD B DULANY, JR.__
SIGNATURE OF ATTORNEY

22.